[Crim. No. 23547. Second Dist., Div. Five. Apr. 4, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY SMITH, Defendant and Appellant.

402

**COUNSEL**

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KAUS, P. J.**—Defendant Larry Smith was charged with armed robbery. (Pen. Code, § 211.) A jury found him guilty of first degree robbery and also found that he was armed when the offense was committed. The court found a prior felony allegation to be true. Defendant was sentenced to prison; he was also sentenced to additional punishment under Penal Code section 12022.5, or "alternatively," to the minimum punishment provided under section 3024.

FACTS

Since defendant's contentions are directed to procedural matters, our statement of the facts of the crime will be short.

Defendant and a codefendant, Larry Holloway, who was tried sepa-

rately, were charged with robbing one Joseph Dana in August 1972. Defendant pointed a single-barrelled shotgun at Dana, demanded money, and also took Dana's wallet and wristwatch. At the trial, Dana and an eyewitness, Lannie Julias, identified defendant as one of the robbers. Julias had noted the license number on the robbers' automobile. Defendant and Holloway were later arrested riding in a vehicle with the plates noted by the witness. Defendant was a passenger. Besides money, a loaded shotgun and extra shells were found in the car. Defendant was observed wearing a watch like the victim's; this watch was next seen under the back seat of the police car in which defendant was transported, and was identified by the victim as his.

The defense was an alibi. Four witnesses and defendant testified, in substance, that he was somewhere else when the robbery occurred.

Before trial, defendant personally made motions to represent himself, to have private counsel instead of the public defender appointed, and to be granted propria persona status to assist his attorney. All these motions were denied.

Defendant admitted having been convicted of a felony, murder, in August 1968. The trial proceeded. On the second day of jury deliberations the court reread certain instructions and gave the jury an elaborated version of the *Allen* charge, which we discuss in detail below. Later that day, the jury returned with a verdict of guilty.

Additional facts will be added in the discussion.

### Issues

Defendant contends: 1) The trial court coerced the jury to reach a verdict. 2) The trial court erred in refusing to appoint another attorney. 3) There was no evidence that the weapon used in the robbery was operable. 4) He was improperly sentenced under Penal Code section 3024.

### Discussion

#### 1. *Jury Coercion*

The jury started deliberations on January 31, 1973, at 10:15 a.m. and was excused at 4:15 p.m. The next day the jury deliberated from 9 a.m. until 11 a.m. The court then asked the jury for the numerical division on the last ballot. It was told "six to six."

The court then reread several instructions, and read the *Allen* instruc-

tion, set forth in the margin.[1] The court also pointed out that if the jury did not reach "a decision in this case, in all likelihood the case will be retried." The court reminded the jury "that it costs the taxpayers . . . $3,000 per day to operate a superior court . . . , not that the factor of money should have any effect upon your individual decisions, but just the seriousness of the case and the importance of following the Court's instructions as to the law and deliberating in good faith . . . ."

The court told the jury that if "you have not reached a decision by tomorrow at 12 o'clock, then, of course, I will have to declare this matter a hung jury and we will then have to reset the matter for trial. With the hope that you will be able to reach a verdict, but without any directions from me that you reach a verdict because I do not want you individually to compromise your own personal opinions—I can only comment in this case that, certainly, I do not think this is a complicated case. The testi-

---

[1]The *Allen* instruction was originally approved in *Allen* v. *United States* (1896) 164 U.S. 492 [41 L.Ed. 528, 17 S.Ct. 154]. The court read the instruction as given in *People* v. *Ortega*, 2 Cal.App.3d 884, 896, footnote 3 [83 Cal.Rptr. 260].

" 'In a large proportion of cases, and perhaps strictly speaking, in all cases, absolute certainty cannot be attained or expected. Although the verdict to which a juror agrees must, of course, be his own verdict, the result of his own convictions and not a mere acquiescence in the conclusion of his or her fellows, yet *in order to bring twelve minds to a unanimous result, you must examine the questions submitted to you with candor and with a proper regard and deference to the options of each other.* You should consider that the case must at some time be decided, that you are selected in the same manner and from the same source from which any future jury must be selected, and there is no reason to suppose the case will ever be submitted to twelve men or women more intelligent, more impartial or more competent to decide it, or that more or clearer evidence will be produced on the one side or the other. And with this view, it is your duty to decide the case, if you can conscientiously do so. In order to make a decision more practicable, the law imposes the burden of proof on one party or the other in all cases. In the present case, the burden of proof is on the People of the State of California to establish every part of it beyond a reasonable doubt. And if in any part of it you are left in doubt, the defendant is entitled to the benefit of the doubt and must be acquitted. *But in conferring together, you ought to pay proper respect to each other's opinions and listen with a disposition to be convinced to each other's arguments. And on the other hand, if much the larger number of your panel are for a conviction, a dissenting juror should consider whether a doubt in his or her own mind is a reasonable one,* which makes no impression upon the minds of so many men or women, equally honest, equally intelligent with himself or herself and to have heard the same evidence with the same attention and with an equal desire to arrive at the truth and under the sanction of the same oath. And on the other hand, *if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably and ought not to doubt the correctness of a judgment,* which is not concurred in by most of those with whom they are associated, and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows. That is given to you as a suggestion of the theory and rationale behind jurors coming to a decision one way or the other.' " (Italics added.)

mony is not terribly complicated, and, frankly, I do not see any reason why, after careful and due deliberation, you could not reach a decision in this case one way or the other, either guilty or innocent."

Defendant finds issue with nearly every statement made by the court. Defendant also asserts that the *Allen* instruction "should never again be read in a California courtroom." Assuming we are unwilling to perform such radical surgery, he contends: 1) the instruction was confusing, because the jury was equally divided, and the essence of the *Allen* instruction is that the minority reconsider its views in light of the majority's views. (*Supra,* fn. 2.) 2) The court coerced the jury into reaching a verdict by setting a deadline for reaching a verdict or declaring a mistrial, by stating that the case was "not complicated" and that the jury should be able to reach a verdict, by commenting on the costs of running a courtroom and by declaring that the case would probably be retried.

The *Allen* instruction, although rejected in many state and federal courts (see, e.g, discussion in *United States* v. *Bailey* (5th Cir. 1972) 468 F.2d 652, 661-669; Annot., 100 A.L.R.2d 177), was recently approved in this state. (*People* v. *Ozene,* 27 Cal.App.3d 905, 912-913 [104 Cal.Rptr. 170] and cases cited; *People* v. *Gibson,* 23 Cal.App.3d 917, 921-922 [101 Cal. Rptr. 620]; *People* v. *Ortega, supra,* 2 Cal.App.3d 884, 896. See also *People* v. *Carter,* 68 Cal.2d 810, 815-816 [69 Cal.Rptr. 297, 442 P.2d 353].) The chief danger in the *Allen* charge is the admonition that the minority rethink its position; doubtless, particularly where the vote is lop-sided, the *Allen* charge can compound the inevitable pressure to agree felt by minority jurors. (See *United States* v. *Bailey, supra,* 468 F.2d 652, 662-663.)

■ But, whatever the merits or demerits of this so-called "dynamite charge" where the jurors are unevenly divided, this is not the case in which to complain: the jury stood six to six. No "dissenting juror" was asked to consider whether his or her doubt was a reasonable one; there were no minority jurors who "ought seriously to ask themselves" whether the majority view was not correct. A recanvassing of the *Allen* charge must wait for a case to which its dangers apply. If, as defendant contends, the charge was inappropriate precisely because the jury was equally divided, any error was not prejudicial.[2]

Defendant complains of most of the court's comments after giving the *Allen* instruction. ■ The basic test of coerciveness is "whether the

---

[2]The *Allen* charge would be most effective and least dangerous in this very situation—where the deliberations have been lengthy but majority and minority blocs have not formed.

instruction and the remarks of the court, viewed in the totality of the circumstances, operated to displace the independent judgment of the jury in favor of compromise and expediency." (*People* v. *Ozene, supra,* 27 Cal. App.3d 905, 913; see also *People* v. *Carter, supra,* 68 Cal.2d 810, 814.)

Although even an equally divided jury can surrender its "independent judgment" and thus be coerced into reaching a verdict, the serious coercive potential where a court strongly encourages a jury to reach a verdict is, first, the jury's impression that the court agrees with the majority of jurors, and, second, the pressure felt by minority jurors to accede to the majority view. (*People* v. *Crowley,* 101 Cal.App.2d 71, 75, 79 [224 P.2d 748].)

■ Defendant first contends that the court coerced a verdict by setting a deadline to reach a verdict or be discharged. We disagree. Defendant, noting that the issue has not been decided in California, relies, by analogy, on the impermissible threat to lock up the jury for the night. (*People* v. *Carter, supra,* 68 Cal.2d 810, 813-814, fn. 1; *People* v. *Savage,* 128 Cal. App.2d 123, 126 [274 P.2d 905]; *People* v. *Crowley, supra,* 101 Cal.App. 2d 71, 79.) The analogy fails for obvious reasons: as defendant points out, being locked up for the night is reasonably perceived as punishment. We fail to see how the court's statement that the jury would be discharged—set free—could be viewed as punishment, and therefore as coercive.

Moreover, even though the threat to lock up a jury if it does not reach a verdict within a specified time is coercive in itself, regardless of the jury's numerical division, the fact remains that the effectiveness of the coercion springs chiefly from the pressure imposed upon the dissenting jurors: ". . . we think it would require unusual stamina in one or more dissenting jurors to hold to their minority views against the remainder, who would naturally be somewhat rebellious at the thought of being locked up for the night . . . ." (*People* v. *Crowley, supra,* at p. 79.)

Defendant relies on *Goff* v. *United States* (10th Cir. 1971) 446 F.2d 623, in which the trial court coupled an *Allen* charge with a statement that if the jury did not reach a verdict within the "next hour or so" it would have to call a mistrial. The court held that it was "impermissibly suggestive and coercive for the Court to place a time fuse on the period of jury deliberation." (*Id.* at p. 626.)

There is an obvious distinction between giving the jury "an hour or so," and, as in this case, informing the jury at 11 a.m. on one day that they had until noon of the following day.[3] Moreover, *Goff* does not tell us how

[3]A deadline of one year would be patently noncoercive; an hour or two tends to be coercive.

the jury was divided. To the extent that *Goff* states a rule that applies to cases in which the jury is unevenly divided, we agree that a short "time fuse" is coercive. If *Goff* is intended to state a general rule that the imposition of any time limit, regardless of the jury's status, is coercive, we disagree. A time limit, like many other factors in determining coercion, must turn on the circumstances of the case. (See *People* v. *Burton,* 55 Cal.2d 328, 356 [11 Cal.Rptr. 65, 359 P.2d 433].)

■ Defendant contends that the court coerced a verdict by stating that the case was "not complicated" and the jury ought to be able to reach a verdict. That statement is not, without more, coercive. *(People* v. *Burton, supra,* at p. 356.) In *People* v. *Crossland,* 182 Cal.App.2d 117 [5 Cal. Rptr. 781], relied on by defendant, the jury was divided 10 to 2; moreover, the court, rather than making the temperate statement involved in this case, stated, " 'If I may say, this is probably the most simple case I have ever tried in my twelve years as a Superior Court Judge, . . .' " (182 Cal.App.2d at p. 118.) In the circumstances, the jury heard only one message. And in *People* v. *Carter, supra,* 68 Cal.2d 810, the court's statement that the case was not "complicated" merely added to the coercive effect of the trial court's "exasperated and peremptory tone" in refusing to "stay up here two or three hours" for the jury to reach a verdict, coupled with the threat to lock it up—"all . . . clearly concentrated upon the lone dissenting juror." *(Id.* at pp. 814, fn. 1, 820.)

■ Defendant contends that the court's statement of its intention to declare a mistrial was coercive because the court had no authority to do so without questioning the jurors individually. Apart from the legal premise being incorrect[4] *(Paulson* v. *Superior Court,* 58 Cal.2d 1, 7, 8 [22 Cal. Rptr. 649, 372 P.2d 641]; *Clemensen* v. *Municipal Court,* 18 Cal.App.3d 492, 501-502 [96 Cal.Rptr. 126]; *People* v. *Smith,* 13 Cal.App.3d 897, 910-911 [91 Cal.Rptr. 786, 52 A.L.R.3d 875]); we fail to see how a ruling that may lead to a later double jeopardy plea is coercive in effect on the present jury.

Defendant's complaint that the court should not have commented on the costs of a retrial is without merit; the comment is proper. *(People* v. *Burton, supra,* 55 Cal.2d 328, 356-357; *People* v. *Miles,* 143 Cal. 636, 639 [77 P. 666].) His contention that the court erred in stating that the matter would probably be retried if the jury deadlocked, because, he says,

---

[4]The power of the trial court to declare a mistrial cannot be questioned. Concededly, with respect to the legitimacy of the retrial, the first court acts at its peril in discharging a jury without clearly determining that they are deadlocked. (E.g., *Clemensen* v. *Municipal Court, supra,* 18 Cal.App.3d 492, 502-503.)

the "majority of cases" are disposed of by dismissal or plea bargain is equally meritless. The comment was approved in *People* v. *Burton, supra,* 55 Cal.2d 328, 357.

In conclusion, the trial court's comments, taken singly or collectively, were not coercive. They amounted to no more than a strong suggestion to the jurors to do their job, and the likelihood that this equally divided jury would sacrifice its independent judgment was no greater or less than that a jury, freshly charged after hearing the evidence, would decide to reach a chance verdict. Something more than the possibility of irresponsibility is required to find jury coercion.

## 2. *Inadequacy of Counsel*

█ Without exactly claiming that he was deprived of effective counsel, defendant contends that the trial court committed "prejudicial error" in refusing to investigate his complaints about his attorney and to appoint private counsel. The contention is without merit.

Defendant's motion to represent himself was denied. He then complained that the public defender's office was "overloaded" and that there was "very little relationship between the two of us." The public defender explained that his office had not represented defendant at the preliminary hearing and that he had not begun to prepare the case pending the court's ruling on defendant's pro per motion. Defendant's alternative request that the court appoint private counsel was denied, and the matter was set for trial. On the trial date, defense counsel asked for a two-week continuance because he was having trouble locating witnesses needed for the defense. The continuance was granted. Defendant then requested that he be granted pro. per. status in order to use the jail law library and assist his attorney. The court denied the request.

Defendant contends as follows: "In as much as the trial court, being aware of appellant's difficulties in obtaining witnesses, denied motions for pro. per. representation and substitution of counsel and failed to investigate appellant's complaints regarding the public defender, judgment must be reversed." Defendant's precise complaint is not clear. In his pro. per. motion for a new trial, he claimed that witnesses who could give "material" testimony were not called. In fact, four alibi witnesses testified in his defense. Nothing in the record indicates that there were other witnesses who could give "material" testimony.

In any event, "the choice of which, and how many, of potential witnesses [to call] is precisely the type of choice which should not be subject to review by an appellate court." (*People* v. *Floyd,* 1 Cal.3d 694, 709 [83

Cal.Rptr. 608, 464 P.2d 64].) Boiled down, defendant is merely complaining that he should not have been represented by the public defender. Just as the defendant in *People* v. *Williams,* 2 Cal.3d 894, 904-905 [88 Cal. Rptr. 208, 471 P.2d 1008], this defendant was given sufficient opportunity to express his complaints; he came up with nothing to justify the appointment of private counsel.

### 3. *Operability of Weapon*

■ The court imposed additional punishment prescribed by Penal Code section 12022.5,[5] because defendant used a firearm in committing the robbery. Defendant contends the punishment should be struck.

Defendant admits the jury was instructed that the People must prove the operability of the weapon—an instruction to which he may not have been entitled[6]—but contends that the evidence must be direct, not circumstantial. He cites *People* v. *Aranda,* 63 Cal.2d 518, 532 [47 Cal.Rptr. 353, 407 P.2d 265], which imposes no such requirement.

The circumstantial evidence that the weapon was operable was more than sufficient: Defendant was armed with a shotgun during the robbery. When he was arrested, a loaded shotgun and additional shotgun shells were found in the vehicle in which he was riding. A jury could easily infer that defendant would not have carried a loaded shotgun with additional shells, if the weapon were inoperable.

### 4. *Admission of Prior Felony*

Defendant admitted that he had been convicted of a prior felony. As an "alternative" to the additional punishment prescribed by Penal Code section 12022.5, the court imposed punishment under Penal Code section 3024. Defendant contends that he was not informed of his rights under *Boykin* v. *Alabama,* 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709] before admitting the prior felony and therefore he cannot be punished under

---

[5]Penal Code section 12022.5 provides in part: "Any person who uses a firearm in the commission . . . of a robbery, . . . upon conviction of such crime, shall, in addition to the punishment prescribed for the crime of which he has been convicted, be punished by imprisonment . . . for . . . not less than five years."

[6]*People* v. *Hayden,* 30 Cal.App.3d 446, 452 [106 Cal.Rptr. 348], held that section 12022.5 does not require proof that the weapon was operable, and distinguished *People* v. *Torres,* 19 Cal.App.3d 724 [97 Cal.Rptr. 139]. The jury, however, was instructed that the "prosecution does bear the burden of proving . . . that the firearm used was operable." Defendant of course benefitted from the instruction, but attempts to double the benefit in arguing, first, that the People did not prove the weapon was operable, and, second, that if they were not required to so prove, defendant was prejudiced because he sacrificed an opportunity to prove that the gun was inoperable.

section 3024. (Cf. *In re Yurko,* 10 Cal.3d 857, 864 [112 Cal.Rptr. 513, 519 P.2d 561].)

*Yurko* applies to admissions of priors occurring after March 7, 1974. In any event, the section 3024 punishment was imposed as an "alternative" to the section 12022.5 punishment. Since we have held that the section 12022.5 punishment was properly imposed, the part of the judgment relating to section 3024 must be struck.

### CONCLUSION

The "alternative" imposition of punishment under section 3024, subdivision (c), is struck as surplusage. In all other respects, the judgment is affirmed.

Stephens, J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 29, 1974.