State v. May

STATE OF NORTH CAROLINA v. ARTHUR LUTHER MAY

No. 7920SC84

(Filed 5 June 1979)

**1. Searches and Seizures § 23— probable cause for search warrant**

An officer's affidavit was sufficient to establish probable cause for the issuance of a warrant to search defendant's grocery store for stolen items where the affidavit stated that the officer observed two individuals loading boxes of frozen meat into their car behind defendant's grocery at night and that the officer thereafter determined that the meat had been stolen that morning during a break-in of a residence.

**2. Criminal Law § 34.6— other crimes—competency to show guilty knowledge**

In this prosecution for feloniously receiving stolen goods, testimony by one of the thieves that he had been to defendant's store at least 50 times to sell him merchandise was competent to show that defendant knew or had reasonable grounds to believe that the goods he received on the occasion in question had been stolen.

**3. Receiving Stolen Goods § 5.1— sufficiency of evidence**

The evidence was sufficient for the jury in a prosecution for feloniously receiving stolen goods where one of the thieves testified that he and another stole guns, meat, jewelry and other items and delivered them to defendant, that defendant many times had purchased merchandise with no questions asked, and that defendant had observed conduct of the thief obviously indicating a desire to avoid the police and legitimate customers in defendant's store, and where officers testified that a stolen gun was found under defendant's bed and stolen meat was found in a locked ice box on his premises.

**4. Criminal Law § 114.2— failure to recapitulate evidence—subordinate feature—absence of request**

In a prosecution for receiving stolen goods in which the State presented overwhelming evidence that a stolen gun was found beneath defendant's bed, including identification testimony by the owner of the gun, the trial court did not express an opinion on the evidence in failing to summarize testimony by one of the thieves on cross-examination by defendant that he took all of the stolen guns when he left defendant's store, it having been incumbent on defendant to request an instruction on this subordinate feature of the evidence if he desired such an instruction.

**5. Receiving Stolen Goods § 6— instructions—awareness of receipt of property**

In a prosecution for feloniously receiving stolen goods, including a quantity of meat, the trial court's mandate to the jury was sufficient without requiring the jury to find that defendant knew the thief had left the meat on his premises, since it is implicit that in order to receive property, knowing or having reasonable grounds to know it was stolen, one must be aware that he has actually received the property, and since all the evidence tended to show that defendant knew he had the meat.

State v. May

6. Receiving Stolen Goods § 1— elements—ownership of stolen goods
    Proof of ownership of the stolen property is not an essential element of the crime of receiving stolen goods.

7. Criminal Law § 122.2— instructions urging verdict—no coercion of verdict
    The trial judge did not coerce a verdict when he encouraged the jury to reconcile its differences while carefully admonishing the jurors not to surrender their conscientious convictions.

APPEAL by defendant from *Mills, Judge.* Judgment entered 12 September 1978 in Superior Court, STANLY County. Heard in the Court of Appeals 25 April 1979.

Defendant was tried and convicted upon an indictment charging him with feloniously receiving one shotgun and other personal property including three packages of meat, having a value of less than $200, knowing or having reasonable grounds to believe the property to have been feloniously stolen as the result of a felonious breaking and entering with intent to commit larceny. Judgment was entered sentencing defendant for a period of not less than six months nor more than ten years.

The evidence tends to show the occurrence of the following sequence of events: On 27 April 1978 around 9:30 a.m., David Lawson and Mike Fidler drove to the Millingport section of Stanly County to break into a house. They drove to the residence of Mr. and Mrs. Joe H. Vick and entered the house by forcing open a sliding glass door with a tire tool. Lawson testified to taking a .410 gauge single-barrel automatic shotgun, two rifles, a police scanner, jewelry, and packages of frozen meat packaged in brown paper and labeled "Thompson & Son". As soon as the items were loaded into the trunk of Lawson's car, he proceeded to the Lakeview Grocery on Centergrove Road near Kannapolis. Defendant was proprietor of that store and maintained a residence in the rear portion of the building. Lawson took the goods to defendant because of a previous arrangement wherein defendant agreed to buy merchandise with no questions asked and regardless of from where it came.

Lawson entered the store, waited until a customer left, and informed defendant that he had some rifles to sell. Lawson and Fidler brought the items into the store and defendant agreed to pay $200 for everything. However, before defendant could pay

Lawson, a police car drove by the store. Lawson left in his car after telling defendant that he would return for the money. Lawson and Fidler drove off in their car to get rid of the jewelry. When they started to return to the store, they were stopped briefly by the police and released. They finally returned at 4:30 p.m. intending to reclaim everything but the meat. Again they returned at 8:30 p.m., this time in Fidler's automobile, to get the frozen meat. As Lawson and Fidler were loading the meat into their car, they were "picked-up" by Detective Yow of the Kannapolis Police Department.

Detective Yow found Lawson and Fidler in possession of two boxes containing frozen meat labeled "Thompson & Son". Lawson and Fidler both were taken to the police department where Yow discovered that the meat had come from a break-in in Stanly County. After meeting with detectives from the Stanly County Sheriff's Department, Yow secured a search warrant and returned to the defendant's business around 11:00 p.m. accompanied by the detectives from Stanly County. The warrant was read, and the premises were searched. A .410 gauge shotgun, fitting the description of one of the stolen guns, was retrieved from beneath defendant's bed. Three packages of meat labeled "Thompson & Son" were located in a locked ice chest sitting just outside the front door of defendant's store.

Defendant appeals from the entry of judgment on the jury verdict of guilty as charged and assigns error to rulings and instructions of the trial court.

*Attorney General Edmisten, by Associate Attorney Benjamin G. Alford, for the State.*

*Robert M. Davis for defendant appellant.*

MORRIS, Chief Judge.

Defendant presents five arguments in support of his nine assignments of error. We will address each assignment of error in the order in which they are discussed by the parties in their briefs.

[1] The validity of the search warrant, which was the means of retrieving the .410 gauge shotgun and the frozen meat from defendant's store, has been challenged on the grounds that the af-

fidavit and application for the search warrant failed to establish probable cause for the issuance of the warrant. The application provides in part as follows:

"On April 27, 1978 at 3:15 P.M., I, Det. Lt. I. T. Yow received information that Otto May, owner of Lakeview Grocery in Kannapolis, N.C. was receiving stolen merchandise. I have received information for the past 3 years of this same nature."

Defendant correctly cites *State v. Campbell*, 282 N.C. 125, 191 S.E. 2d 752 (1972), as authority that the above information could not properly serve as a basis for a finding of probable cause to issue a search warrant. *See also State v. Hayes*, 291 N.C. 293, 230 S.E. 2d 146 (1976). The basis for rejecting such hearsay information was established in the decisions *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed. 2d 637 (1969). Those cases require that when information contained in an affidavit comes from an unidentified informant, underlying facts and circumstances which support the informant's reliability and credibility must be set forth in the application. However, this Court has held that such information contained in the affidavit does not render the entire application invalid if, in fact, there are other factual matters contained in the application which alone would support a finding of probable cause. *State v. McLeod*, 36 N.C. App. 469, 244 S.E. 2d 716 (1978), *cert. denied*, 295 N.C. 555, 248 S.E. 2d 733 (1978). This Court's opinion, expressed by Judge Mitchell, noted that under such circumstances the so-called second prong of the *Aguilar* test was not applicable. He stated:

"Even though the affidavit contained some information which may have come from an unidentified informant, we think the credibility of the informant or the reliability of such information need only be shown when it is necessary that such hearsay be relied upon in finding the requisite probable cause." 36 N.C. App. at 474, 244 S.E. 2d at 719.

Therefore, we must determine whether the remaining information provided in the application is sufficient to establish probable cause for the search.

That portion of the application for the search warrant outlining the facts to establish probable cause appears in the record as follows:

"The applicant swears to the following facts to establish probable cause for the issuance of a search warrant: On April 27, 1978 around 8:30 P.M., Sgt. L. G. Heintz and myself, Lt. I. T. Yow of the Kannapolis Police Department was checking the Lakeview Grocery on Center Grove Rd., in Kannapolis, N.C. As we pulled into the parking lot of the grocery I, Lt. Yow, observed a 1972 Chevrolet, 2S, color Grey with a black stripe down the middle of the top of the car, bearing N.C. tag #EDE-32, parked at the rear of the west side of the building. The two white males outside of the car were observed by Heintz and myself, Yow. Sgt. Heintz backed up and we talked with a John Michael Fiddler and a David Lawson who were trying to put two boxes in the car. The boxes were full of frozen meat, the meat was identified by Det. Roger Lowder, Det. Loy Ingold and Det. Mike Lowder of the Stanly County Sheriff Department in Albemarle, N.C. as being stolen from a house breaking and entering and larceny occurring in Stanly County, N.C., the victim being Joe H. Vick of Rt. 3 Albemarle, N.C. in the Millingport area of Stanly County, N.C. between 8AM and 5 PM on April 27, 1978. The meat identified by the Stanly County Detectives bore the markings of Thompson and Son Processing of Albemarle, N.C. #763.

On April 27, 1978 at 3:15 P.M., I, Det. Lt. I. T. Yow received information that Otto May, owner of Lakeview Grocery in Kannapolis, N.C. was receiving stolen merchandise. I have received information for the past 3 years of this same nature."

In our opinion, the facts within Detective Yow's knowledge, in the absence of the reference to information he had received suggesting that defendant had been receiving stolen goods for the past three years, are sufficient to establish probable cause for the issuance of the search warrant. It is firmly established "that only the probability, not a prima facie showing, of criminal activity is the standard of probable cause." *Spinelli v. United States*, 393 U.S. at 419, 89 S.Ct. 584, 21 L.Ed. 2d at 645. Moreover, this Court noted in quoting the United States Supreme Court in *Aguilar v. Texas, supra*, that:

"[W]hen a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant,' . . . and will sustain the judicial determination so long as 'there was substantial basis for [a magistrate] to conclude that [the items for which the search was authorized] were probably present. . . .'" *State v. McLeod*, 36 N.C. App. at 473, 244 S.E. 2d at 719.

Officer Yow personally observed two individuals loading merchandise into their car behind a closed grocery at night. There is no dispute that he was justified in apprehending those individuals under such circumstances. He thereafter determined that the merchandise was recently stolen from a residence in Stanly County. The circumstances strongly suggested that the meat had come from the grocery. The meat was still frozen. A grocery commonly has freezers. There was no mention of any other vehicles in the vicinity from which the meat could have been transferred. Furthermore, Detective Yow also learned from the Stanly County Sheriff's Department that a quantity of such meat with the same distinguishing wrapping had been taken in the Stanly County break-in. These facts taken together amply support the conclusion that it was probable that other stolen frozen meat, and probably some of the other items taken in the same break-in, could be found in the grocery. We emphasize that the application of the probable cause standard must be practical and not abstract. This also constitutes the position of the United States Supreme Court, which has stated:

"If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *United*

*States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed. 2d 684, 689 (1965).

[2] Defendant next assigns error to the admission, over objection, of certain testimony. In his brief, defendant argues that the testimony of David Lawson that he had been to defendant's store at least 50 times to sell him merchandise was incompetent and immaterial. We disagree. The rule and its exceptions with respect to the admissibility of evidence of previous crimes which are brought out in the State's case in chief is well established, although sometimes difficult of application. The classic explanation of the rule and its exceptions is found in *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954), and need not be further elaborated. The evidence elicited from the witness Lawson falls within the following exception:

"3. Where guilty knowledge is an essential element of the crime charged, evidence may be offered of such acts or declarations of the accused as tend to establish the requisite guilty knowledge, even though the evidence reveals the commission of another offense by the accused." 240 N.C. at 175, 81 S.E. 2d at 367.

The fact that Lawson and others had previously sold merchandise to defendant, the intimation clearly being that such goods were stolen, was clearly relevant to prove that defendant knew or had reasonable grounds to believe that the goods he received from Lawson and Fidler had been stolen. Such guilty knowledge is one of the essential elements of the crime of receiving stolen goods, G.S. 14-71, the lack of which defendant tried to prove in the cross-examination of the witness Lawson. The evidence that defendant on numerous occasions purchased merchandise, as Lawson stated, with no questions asked and regardless of from where it came tends to indicate that defendant had established a pattern of purchasing stolen goods and had at least reasonable grounds to believe the goods he received from Lawson were stolen. Similar evidence was held to have been properly admitted under substantially similar circumstances in *State v. Newton*, 25 N.C. App. 277, 212 S.E. 2d 700 (1975). We so hold here.

[3] Defendant produced no evidence in his behalf, moved for dismissal of the action at the close of the evidence, and assigns er-

ror to the trial court's denial of that motion. On appeal, defendant explains the basis for that motion: (1) That the evidence obtained by the search should have been excluded, (2) that there was no evidence defendant purchased the items, and in fact Lawson took back most of the merchandise, and (3) that there was no evidence defendant knew that Lawson had left any meat around the building.

We need not elaborate on the well-established rule that, in reviewing the denial of a motion to dismiss a criminal action, the evidence must be considered in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom. *State v. Green*, 295 N.C. 244, 244 S.E. 2d 369 (1978). There must be, however, substantial evidence of each element of the offense charged. *State v. Snead*, 295 N.C. 615, 247 S.E. 2d 893 (1978). The essential elements of the offense of receiving stolen goods in violation of G.S. 14-71 are: (a) the stealing of the goods by someone other than the accused, (b) that the accused received the goods knowing or having reasonable grounds to believe the same to have been feloniously taken, and (3) continued possession or concealment with a dishonest purpose. *Cf. State v. Muse*, 280 N.C. 31, 185 S.E. 2d 214 (1971), *cert. denied*, 406 U.S. 974, 92 S.Ct. 2409, 32 L.Ed. 2d 674 (1972) (decided prior to 1975 amendment). The evidence, taken in the light most favorable to the State, establishes each essential element. The confessed thief's testimony concerning the larceny of the goods and delivery of the goods to the defendant sufficiently establishes the first element of the crime. The testimony that defendant many times had purchased merchandise with no questions asked, in addition to defendant's observation of the thief's conduct obviously indicating a desire to avoid the police and legitimate customers, is sufficient to take the question of guilty knowledge to the jury. And finally, the discovery of the fruits of the break-in recovered from beneath defendant's bed and within a locked ice box on his premises, pursuant to a valid search, is sufficient evidence of the third essential element of the crime to go to the jury. The trial court properly denied the motion to dismiss.

[4]   Defendant next assigns error to portions of the jury instructions. He first contends that the trial court expressed an opinion upon defendant's guilt, in violation of G.S. 15A-1232, by failing to summarize evidence elicited by defendant on cross-examination

attempting to cast doubt upon the identification of the gun found beneath defendant's bed. He contends that the trial judge's instructions improperly presumed that the gun found under defendant's bed had been stolen in the break-in in Stanly County. However, the only evidence elicited by defendant which placed any doubt upon the identification of the gun was the witness Lawson's testimony that when he went back to the store he took all of the guns he had left there, that it was his intention not to leave anything. This testimony was in the face of overwhelming identification testimony by the owner of the stolen gun and the officers who found the gun beneath defendant's bed. If defendant was concerned with having this subordinate feature of the evidence emphasized to the jury, it was incumbent upon him to bring it to the trial judge's attention before the jury was sent to deliberate on the case. The trial judge is only required to state the evidence to the extent necessary to apply the law to the evidence. G.S. 15A-1232. Failure to bring the objection to the trial judge's attention will be deemed a waiver of that objection. *State v. Hunt*, 289 N.C. 403, 222 S.E. 2d 234 (1976), *death sentence vacated*, 429 U.S. 809, 97 S.Ct. 46, 50 L.Ed. 2d 69 (1976). This assignment of error is overruled.

In support of his assignment of error No. 6, defendant argues that the trial court inaccurately summarized the evidence, that he failed to mention that the witness Lawson's credibility had been attacked due to his admission that he previously had perjured himself, and that the court again presumed the gun found beneath defendant's bed was the stolen gun. First, it is clear from the record that the court's summary was accurate. The court stated "that the meat and shotguns were left with Mr. May for a purchase price of some $200.00." This fact is uncontradicted in the evidence. Defendant characterizes the court's statement as an indication that $200 was actually exchanged. There is no basis for this position in the record. Defendant again objects to the trial court's failure to bring out subordinate features of the case which he wanted emphasized. It suffices to say, in light of our previous discussion, that defendant failed properly to request the judge to do so.

For similar reasons we find no merit in defendant's seventh assignment of error which assigns error to other portions of the charge.

[5, 6]  Assignment of error No. 8 is directed to the mandate to the jury. We find that the instruction accurately states the law. Defendant's contention that the instruction fails to require the jury to find that defendant knew Lawson had left the meat, or that the items found were the same items stolen from the Vick residence, cannot be sustained. It is implicit that in order to receive property, knowing or having reasonable grounds to believe that it was stolen, one must be aware that he actually has received property. It has been said that " '[r]eceiving' necessarily implies consenting to receive". *State v. Wynne*, 118 N.C. 1206, 1207, 24 S.E. 216, 217 (1896). The evidence presents no inference other than the fact that defendant knew he had the meat. The officers, in searching the premises, had to obtain a key from the defendant for access to the freezer. Again, if defendant had wanted a special instruction on this aspect of the case, he was required to tender a request for such an instruction. *See State v. Abernathy*, 295 N.C. 147, 244 S.E. 2d 373 (1978). Defendant also argues that the court erred in failing to require the jury to find that the allegedly stolen property belonged to the Vicks, the victims of the break-in. There is, however, no such requirement. Proof of ownership of the stolen property is not an essential element of the crime of receiving stolen goods.

[7]  Finally, defendant argues that the trial court coerced the jury into reaching a verdict. We cannot agree. The instruction appears in the record as follows:

"COURT: Now, before the recess I let you go for lunch. You all indicated that you were not able to reach an agreement. Now, I presume that you ladies and gentlemen realize what a disagreement is. It means, of course, that it will be some more time of the court to be consumed in the trial of this action. Now, I don't want to force you or coerce you in any way to reach a verdict, but it is your duty to try to reconcile your differences and reach a verdict if it can be done without any surrender of one's conscientious convictions. You have heard the evidence in the case. A mistrial, of course, will mean that another jury will have to be selected to hear the case and evidence again. The court recognizes the fact that there are sometimes reasons why jurors cannot agree. The court wants to emphasize the fact that it is your duty to do whatever you can to reason the matter over together as reasonable men

and women and to reconcile your differences if such is possible without the surrender of conscientious convictions and to reach a verdict. Now, I will let you resume your deliberations and see if you can."

The trial judge encouraged the jury to reconcile its differences while carefully admonishing them not to surrender their conscientious convictions. Although the jury thereafter returned in less than 20 minutes with a guilty verdict, based upon the record before us, we do not find any coercion by the trial judge. Compare the approved instructions found in *State v. Thomas*, 292 N.C. 527, 234 S.E. 2d 615 (1977), and cases cited therein.

For the foregoing reasons, we find in defendant's trial

No error.

Judges HEDRICK and WEBB concur.