706 P.2d 1353

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Wayne Alan BYERLY,
Defendant-Appellant.**

No. 15285.

Court of Appeals of Idaho.

Sept. 9, 1985.

Van G. Bishop, Nampa, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

A jury found Wayne Byerly guilty of second degree burglary and grand theft.

On appeal he raises two issues: (1) the district court should have dismissed the criminal information because the magistrate relied on inadmissible evidence in holding that there was probable cause that Byerly had committed the offense; and (2) after the jury indicated it was having difficulty reaching a verdict, the district judge's extemporaneous remarks to the jury resulted in a coerced verdict. We affirm the conviction.

## I

Byerly first argues that he was improperly bound over to the district court and the district court should have dismissed the criminal information because the magistrate relied on inadmissible hearsay in finding probable cause that Byerly committed the offense. The assertedly inadmissible evidence was a letter from the FBI reciting the results of a comparison of Byerly's fingerprint with fingerprints found at the scene of the crime. Byerly objected to the introduction of the letter at his preliminary hearing because the letter was not in the form of an affidavit or testimony as required by Idaho Criminal Rule 5.1(b). The magistrate overruled Byerly's objection and admitted the letter in evidence. Rule 5.1(b) requires in pertinent part that:

> [P]robable cause shall be based upon substantial evidence upon every material element of the offense charged; provided that hearsay in the form of testimony, or affidavits, may be admitted to show the existence or nonexistence of ... reports of scientific examinations of evidence by state or federal agencies or officials, provided the magistrate determines the source of said evidence to be credible. Provided, nothing in this rule shall prevent the admission of evidence under any recognized exception to the hearsay rule of evidence.

At the preliminary hearing and upon hearing Byerly's motion to dismiss the in-

formation, both the magistrate and the district judge acknowledged that the letter was neither testimony nor in the form of an affidavit. However, both judges found the evidence to be credible. The district court noted that the "reputation and regularity with which the Federal Bureau of Investigation makes these reports, I think, is of a reliable nature for probable cause."

 We recently have held that, if an accused receives a fair trial, errors related solely to the preliminary hearing will afford no basis for disturbing the judgment of conviction. *State v. Garza*, 109 Idaho 40, 704 P.2d 944 (Ct.App.1985). *See also*, *State v. Maylett*, 108 Idaho 671, 701 P.2d 291 (Ct.App.1985). The only issue Byerly raises concerning a fair trial involves comments made by the district judge to the jury, after the case had been submitted to the jury for decision. As we will next explain, we find no reversible error resulting from the district judge's comments. Therefore, upon concluding that Byerly received a fair trial, we need not determine whether the magistrate erred in admitting the FBI letter in evidence at the preliminary hearing.

## II

Byerly next maintains that he did not receive a fair trial because of the district judge's extemporaneous remarks to the jury when the jury indicated it may be deadlocked. After the jury had deliberated for over five hours, the jury foreman delivered a handwritten note to the judge, stating: "We feel we my [sic] have a hung jury so what do we do now?" The judge so informed both the prosecutor and defense counsel and sought their recommendations. The prosecutor suggested giving the jury a *Bailey* instruction. *See State v. Bailey*, 94 Idaho 285, 291 n. 4, 486 P.2d 998, 1004 n. 4 (1971). However, the court reminded the prosecutor that such an instruction had already been given to the jury.[1] The judge

---

1. Instruction No. 21 stated in part:
 In your effort to reach a verdict in this case, I would suggest that in your deliberations you examine the issues submitted with a proper

regard and consideration for the opinions of each other. Each of you should freely and fairly discuss with your fellow jurors the evidence and deductions to be drawn therefrom,

decided to inquire whether the jury had reviewed instruction No. 21 and whether recess for the evening and continued deliberation on the next day would resolve the deadlock.

The district judge made the following remarks to the jury at 11:48 p.m.:

COURT: I have a note which I've put on the record that you feel that possibly you have a hung jury. Obviously, this doesn't happen every day. It's the first time it's happened to me, anyway.

Instruction number 21, which comes right from Supreme Court decisions concerning compromising, reviewing the evidence, discussing it, everyone rendering their opinions, and, of course, trying to reach a verdict, do you feel as foreman that that has been fully complied with, that everybody really has expressed their opinions and attempted to reach a verdict?

JUROR [FOREMAN] BURTLOW: Yes, I do, Your Honor.

COURT: Do you feel that at this point, you have a hopeless impasse?

JUROR BURTLOW: It might not be hopeless, but it's going to take a long time.

COURT: Okay. I would ask you this, then. In helping me to make a decision, do you feel that if I excuse the jury at this time and reconvene the jury at nine o'clock in the morning, that it would be— that would facilitate it in any way? Sometimes it's tiredness and the hour and the fact that you've been grinding away for seven hours that, you know—I don't know whether that's it or not.

JUROR BURTLOW: I don't know.

COURT: Okay. Anyone else on the jury have any ideas or any opinions as to whether or not that would—I think I know how Mrs. White might feel. I think she's—her vacation is about to start in ten minutes, God willing. Some vacation, huh?

Does anyone feel that a rest would facilitate anything?

JUROR ALLEN: Your Honor, it might be that if we had maybe another half hour or forty-five minutes tonight, that we could probably maybe come a little closer to letting you know.

COURT: That's fine with me. My job is such that, you know, hours don't make any difference, but hopefully I'm sympathetic or understanding of your time. It's a little above and beyond the call of duty to keep jurors out just grinding away. You know, I have no desire to remove the chairs and make you all stand up or anything like that.

In light of that, I would, I guess, just for the old college try, if nothing else, let's reconvene, and we'll go to twelve thirty. And if you can't resolve anything by twelve thirty, then I'll make a decision whether or not to adjourn until tomorrow or to declare a hung jury and let the parties go from there.

And all I can say, you know, in earnest, and I'm not trying to persuade anyone one way or the other. Do what you can and try to resolve it. I have confidence, you know, in the sensibility that all of you have. I think you're excellent jurors in terms of your capabilities, so see if that can do it. If it can't, you know, and if in ten minutes you know that it can't, don't sit around until twelve thirty. We'll go back in a few minutes and see if there's any change in position. And then let me know, and we'll all be

and you should listen to each other's arguments with an open mind. If, after doing so, any of you should be satisfied that a conclusion first reached by you was wrong, you should unhesitatingly abandon that original opinion and render your verdict according to your final decision. You should not hesitate to recede from a previously announced opinion or conclusion because of a sense of pride. Remember that you are not partisans or advocates, but rather judges. However, you should not change the conclusion you have reached merely because one or more or all of your fellow jurors may have come to a different conclusion or merely to bring about a unanimous verdict.

Have in mind in your deliberations that you will make a definite contribution to efficient judicial administration if you arrive at a just and proper verdict in this case. To this end you should make every reasonable effort to reach a verdict.

here to get it resolved in the next ten to thirty minutes, anyway.

I appreciate the effort that you've made thus far, and I obviously don't know where you stand, and I don't want to know where you stand. That'll either resolve itself, or we'll go from there.

Any questions on the part of either attorney?

MR. JONES: Not by the State, Your Honor.

COURT: Okay. We're kind of walking through this water together on this, so thank you for where you're at, and we'll see you in a few minutes.

 The question we must decide is whether the court's oral comments made to the jury had a coercive effect and encroached upon the function of the jury. *State v. Silcox,* 103 Idaho 483, 650 P.2d 625 (1982); *Bailey,* 94 Idaho at 285, 486 P.2d at 998. The test for coercion is whether the instruction, viewed in the totality of the circumstances, was so coercive as to cause a juror to abandon an honest conviction for reasons other than those presented at the trial and by arguments of other jurors, such as to displace the independent judgment of the jury in favor of compromise and expediency. *People v. Smith,* 38 Cal. App.3d 401, 113 Cal.Rptr. 409 (1974); *McMillan v. State,* 253 Ga. 520, 322 S.E.2d 278 (1984); *State v. Jones,* 292 N.C. 513, 234 S.E.2d 555 (1977). Also, the trial court must avoid any remark from which the jury might infer the judge's beliefs as to the merits of the case.

Here, the judge's comments did not (1) cast any light on the merits of the case, (2) did not establish a deadline for reaching an ultimate verdict, (3) made no allusions to the undesirability of a retrial, (4) made no reference to the time or expense taken to try the case, (5) did not insist the jury reveal the numerical division, and (6) did not coerce a minority number of the jurors into surrendering their conscious conviction or honest beliefs. The judge attempted to determine if the jury was at "a hopeless impasse." The foreman replied, "It might not be hopeless, but it's going to take a long time." The judge would have to decide whether to declare a mistrial or have the jury return for further deliberations in the morning. The IDAHO TRIAL JUDGE'S MANUAL § 7.63 recommends the judge inquire of a deadlocked jury or the individual jurors, if they continued their deliberations, "Do you feel that there is a reasonable probability that you may be able to agree upon a verdict?" The judge also informed the jury that "I'm not trying to persuade anyone one way or the other."

The American Bar Association (ABA) has devised a standard jury instruction for a deadlocked jury.[2] That instruction is substantially similar to Idaho's *Bailey* instruction, given to the jury in this case as instruction No. 21. This ABA instruction in part provides "that no juror should surrender his honest conviction as to the weight

**2.** ABA STANDARDS, TRIAL BY JURY, § 5.4 (1968) provides:

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(i) that in order to return a verdict, each juror must agree thereto;

(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

This standard also provides:

(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.

or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict." The standard instruction also indicates that if the jury is unable to agree, the trial judge may repeat the instruction. *See also,* Manual for Model Jury Instructions for the Ninth Circuit, Instruction § 7.06 (1985) ("do not give up your honest beliefs just because others disagree with you or to get the case over with.").

■ Despite the inappropriateness of the judge's reference to one of the juror's impending vacation, the topic of the vacation was resolved during voir dire. The juror, Mrs. White, was planning to go camping on the day following completion of the estimated two day trial. She stated she could be fair and would follow the instructions of the court. Defense counsel challenged her for cause because she would have to complete some of her work duties before going on vacation. The juror indicated that serving on this jury might delay her vacation until her work was completed. The court found that she could be fair and impartial and defense counsel obtained an admission that she could be fair without reservation. The juror also stated she would not necessarily have to leave on her vacation on the date anticipated. Byerly's counsel did not utilize a peremptory challenge to remove this juror and waived his fifth peremptory challenge. Although the judge's remarks, concerning Mrs. White's vacation, would have been best left unsaid when addressing the jury's possible deadlock, our review of the entire circumstances does not reveal that the jury was coerced to reach a verdict. Even the different juror, Allen, who asked for the half hour extension, merely indicated that the additional time might be useful in helping the jury determine whether further deliberation would be beneficial. When viewed in context, the judge's remarks did not constitute coercive statements that a minority number of the jurors should surrender their conscientious belief. *Jenkins v. United States,* 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965); *United States v. Barshov,* 733 F.2d 842 (11th Cir. 1984), *cert. denied,* — U.S. —, 105 S.Ct.

904, 83 L.Ed.2d 919 (1985); *People v. Hardin,* 421 Mich. 296, 365 N.W.2d 101 (1985); *People v. Holmes,* 132 Mich.App. 730, 349 N.W.2d 230 (1984); *State v. May,* 41 N.C. App. 370, 255 S.E.2d 303 (1979). *Cf. State v. Jones,* 292 N.C. 513, 234 S.E.2d 555 (1977).

We affirm the judgment of the district court.

SWANSTROM, J., concurs.

BURNETT, Judge, dissenting.

I respectfully disagree with my colleagues' conclusion that the jury was not unduly pressured to produce a verdict. In my view, the trial judge should have followed the procedure recommended by the American Bar Association in its STANDARDS RELATING TO TRIAL BY JURY § 5.4 (1968).

I acknowledge, of course, that the instruction contained in section 5.4 is similar to one of many instructions given the jury in this case before they initially retired to consider their verdict. However, no such instruction was given at the critical time— when the jury reported, late at night, that they could not reach a verdict. Rather, the judge urged the jurors to keep trying, and he explicitly adverted to the inconvenience one juror might suffer if a verdict were not returned that evening. These comments were unaccompanied by any cautionary language that the jurors were entitled to adhere to their honest beliefs or that they should not change their minds merely to bring about a unanimous verdict.

The vast deference our criminal justice system accords to jury verdicts imposes upon us the duty scrupulously to maintain the integrity of the jury deliberation process. I would set aside the judgment on the verdict and remand the case for a new trial.