109 P.3d 1118

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jennie TIMMONS, Defendant–Appellant.**

No. 30100.

Court of Appeals of Idaho.

Jan. 14, 2005.

Review Denied April 6, 2005.

Alexanderson, Davis, Rainey & Whitney, Caldwell, for appellant. Ron McWilliams argued.

Hon. Lawrence G. Wasden, Attorney General; Melissa Nicole Moody, Deputy Attorney General, Boise, for respondent. Melissa Nicole Moody argued.

LANSING, Judge.

Jennie Timmons appeals from the judgment of conviction entered after a jury found her guilty of aggravated assault. She contends that the district court's response to a question from jurors, instructing them to continue deliberations, placed undue pressure on the jury and resulted in a coerced verdict. We affirm.

**I.**

**BACKGROUND**

As a result of an incident at a Shopko store, Timmons was charged with burglary, Idaho Code § 18–1401, and aggravated assault, I.C. §§ 18–901(b), –905(a). The case proceeded to a jury trial. On the second day of trial, at 3:35 p.m. the jury retired to deliberate. Approximately five hours later, the jury sent the court a note asking, "What happens if we reach a verdict on burglary and not on assault?" The court brought the jury back to the courtroom and engaged in the following exchange with the presiding juror:

THE COURT: So we have a unanimous verdict on one count?

JUROR 561: Correct

THE COURT: And on the other count, you have not been able to reach a unanimous verdict?

JUROR 561: Not up to this point.

THE COURT: Do you think if you were allowed to go back in and spend some more time deliberating—and I want you to be careful how you answer the question, slowly and just what I'm asking. Do you think if you went back in and deliberated some more, reviewed the instructions, and considered the evidence, that the twelve members of the jury would be able to reach a verdict on the remaining count?

JUROR 561: It is possible.

THE COURT: Okay. That having been said, then, it would be the suggestion of this court—it's about ten minutes to nine—that we recess at this time and that we have you come back in and commence deliberations at 8:30 in the morning.

The court then asked for a show of hands from the jurors expressing their preference between continuing deliberations that night or recessing for the evening. A majority of the jurors elected to resume deliberations that evening, and the court allowed them to do so. After the jury left the courtroom, Timmons' counsel asked the court to inform the jurors that if they could not reach a unanimous verdict, the court would declare a mistrial and the case could be retried at the behest of the prosecutor. The court denied Timmons' request. Approximately one hour later, the jury returned with unanimous verdicts of guilty on the assault charge and not guilty on the burglary charge.

## II.

## ANALYSIS

■ On appeal, Timmons contends that the trial court committed error by directing the jury to continue its deliberations without directly answering the jury's query concerning the consequence of an inability to reach a verdict on one count. She maintains that the court should have informed the jury that in the event of a hung jury, a mistrial would be declared and Timmons could be subjected to a second trial. She also asserts that the court should have reiterated to the jury an instruction that it had been given before deliberations began, Idaho Criminal Jury Instruction 204, which cautioned jurors not to "surrender your honest opinion as to the weight or effect of evidence or as to the innocence or guilt of the defendant because the majority of the jury feels otherwise or for the purpose of returning a unanimous verdict." The trial court's failure to take these steps, Timmons asserts, put undue pressure on the jury to reach a unanimous decision, resulting in a coerced verdict.

■ The due process clauses of the state and federal constitutions guarantee an accused a trial by a fair and impartial jury. *State v. Lee*, 131 Idaho 600, 605, 961 P.2d 1203, 1208 (Ct.App.1998). If jury deliberations are tainted by undue pressure, this constitutional guarantee is violated. *Id.* Idaho courts have found undue pressure where deadlocked juries were given a "dynamite instruction" that directed them to continue deliberating and exhorted minority viewholders to reconsider their positions. *See State v. Flint*, 114 Idaho 806, 761 P.2d 1158 (1988); *State v. Clay*, 112 Idaho 261, 731 P.2d 804 (Ct.App.1987). To avoid jury coercion, the Idaho Supreme Court has adopted a "blanket prohibition" against the use of such instructions. *State v. Gomez*, 137 Idaho 671, 676, 52 P.3d 315, 320 (2002); *Flint*, 114 Idaho at 812, 761 P.2d at 1164. However, in prohibiting the use of dynamite instructions, the Supreme Court specifically disclaimed any intent to prohibit instructions directing further deliberations where the jury is not definitely deadlocked:

> Proscribing the use of dynamite instructions does not restrict a trial court ... from polling the individual jurors, and depending on the responses and appearances, then when appropriate guiding them toward another appropriate period of deliberation. This assumes, of course, that the jurors do not declare themselves deadlocked.

*Flint*, 114 Idaho at 813, 761 P.2d at 1165.

In the present case, we are unconvinced by Timmons' contention that the trial court's direction to the jury was coercive. On the contrary, the trial court did as suggested in *Flint*. The court first determined, based on the presiding juror's acknowledgement that further deliberations might yield a unanimous verdict, that the jury was not yet deadlocked. The jurors never informed the court

that they were at an impasse and could not agree on a verdict. The court's direction to continue deliberations plainly was in response to the presiding juror's comment that a unanimous verdict was still possible. The court's comments did not pressure the jury to reach a unanimous verdict nor suggest that minority jurors reconsider their positions.

Our conclusion draws support from *State v. Byerly*, 109 Idaho 242, 706 P.2d 1353 (Ct. App.1985), *overruled on other grounds by State v. Flint*, 114 Idaho 806, 761 P.2d 1158 (1988). In that case, after five hours of deliberations the jury delivered a note to the judge stating, "We feel we [may] have a hung jury so what do we do now?" The judge then engaged in an exchange in which he asked the jury foreman whether the foreman believed that the jury was at "a hopeless impasse." The foreman responded that "it might not be hopeless, but it's going to take a long time." The judge then asked if it would be helpful to excuse the jury for the night, to allow a period of rest, and to reconvene in the morning. One juror responded that if the jury deliberated for another half hour or forty-five minutes they could probably "come a little closer to letting you know." The court agreed to follow that suggestion and instructed the jury to continue deliberations and added, "and if you can't resolve anything by 12:30, then I'll make the decision whether or not to adjourn until tomorrow or to declare a hung jury and let the parties go from there." The jury thereafter rendered a guilty verdict. On appeal, the defendant contended that the court's statements to the jury had a coercive effect, but the Court of Appeals disagreed, noting:

> Here, the judge's comments did not (1) cast any light on the merits of the case, (2) did not establish a deadline for reaching an ultimate verdict, (3) made no allusions to the undesirability of a retrial, (4) made no reference to the time or expense taken to try the case, (5) did not insist the jury reveal the numerical division, and (6) did not coerce a minority number of the jurors into surrendering their conscious conviction or honest beliefs.

*Id.* at 245, 706 P.2d at 1356. Each of these six points concerning the trial court's conduct in *Byerly*, are equally descriptive of the district court's conduct in Timmons' case.

Timmons argues, however, that the court's failure to directly answer the jury's question on the consequences of a deadlocked jury misled the jury, possibly leading them to believe that they must continue deliberations until a unanimous verdict was reached. Timmons argues that, in this respect, her case is indistinguishable from *Gomez*, 137 Idaho 671, 52 P.3d 315, where the Idaho Supreme Court vacated a verdict. In *Gomez*, the jurors asked the court what would happen if they could not reach a verdict, and the court responded that in the case of a deadlock, a mistrial would be declared. The jurors then repeatedly inquired whether the defendant would be retried, and the court responded that the process would be governed by Idaho law and that nothing would be automatic. On appeal, the Idaho Supreme Court held that the trial court's comments were not coercive; in that respect, *Gomez* is not distinguishable from the present case. However, the Supreme Court went on to hold that the trial court should have told the jury that the prosecutor would decide whether to seek a new trial. The trial court's evasive response, the Supreme Court said, may have left the jury with the impression that if it did not reach a verdict, there would not be another trial—that is, that a hung jury would be the functional equivalent of an acquittal. Timmons contends that the same type of error was made by the district court in her case, but we find *Gomez* distinguishable. Unlike the situation in *Gomez*, where the jurors' many questions evidenced a pervasive confusion, there was no indication of jury confusion in this case, and the court's mere instruction to continue deliberations was not misleading.

The present case is more analogous to *State v. Hendry*, 636 N.W.2d 158 (Minn.Ct. App.2002), where the jury sent the court a note asking, "If we do not reach a consensus by the end of the day, what happens?" The trial court did not respond to the jury's query. On appeal, the Minnesota Court of Appeals held that no additional instruction to the jury is required where the jury's ques-

tion concerns neither the evidence nor the law to be applied in the case. *Id.* at 165. Because the question posed by the jury in *Hendry* related to court procedures, and not the law to be applied nor factual questions to be decided by the jury, the appellate court concluded the question was housekeeping in nature and did not require a response from the court. *Id.* at 166.

A similar case is *United States v. Trala,* 386 F.3d 536 (3rd Cir.2004). In that case, after the jury had deliberated for more than seven hours, the court directed a clerk to inquire whether the jury wanted to order dinner or continue with deliberations. The jury responded by asking: "The jury wants to know if they can't come to [a] unanimous decision, and this is before they decide about dinner, is it over or will they have to come back?" The court chose not to respond to the jury's question but instead ordered dinner for them, and three hours later the jury returned a guilty verdict. On appeal, the defendant argued that by not answering the jury's question, the trial court created an impression that the jurors would have to stay until they reached a verdict, no matter how long that took. The Third Circuit Court of Appeals upheld the trial court's actions as a proper exercise of discretion, concluding that the trial court had "merely implied that it was not convinced of a deadlocked jury after only seven and a half hours of deliberations." *Id.* at 543.

In Timmons' case, although the jury's note evidenced that the jurors were experiencing some difficulty reaching a verdict on the assault count, neither the note nor the presiding juror's responses to the court's inquiries expressed a conviction that a unanimous verdict was unattainable. Consequently, an instruction on jury deadlocks was unnecessary. We therefore hold that the district court did not abuse its discretion by merely directing the jury to resume deliberations.

The judgment of conviction entered by the district court is affirmed.

Judge Pro Tem STICKLEN concurs.

Judge GUTIERREZ, dissenting.

I respectfully dissent. Specifically, I do not agree that the instant case can be favorably distinguished from *Gomez.* Rather, I believe the trial court's inadvertent failings in this case lent an appearance of coercion and duress more egregious than that of *Gomez.*

First, there are many similarities between the instant matter and *Gomez.* In both cases, the jury had difficulty in reaching a verdict. In both cases, the jury queried the court as to the effect of its not being able to reach a verdict. In both cases, the jury did not indicate that it was deadlocked. In both cases, the trial court assembled the jury and engaged in a dialogue but failed to answer a direct question regarding the implications of a hung jury. Based on such circumstances, the *Gomez* court concluded that there existed a *reasonable possibility* that the trial court's comments contributed to the verdict. *Gomez,* 137 Idaho at 677, 52 P.3d at 321. This standard has been met in the instant matter as well.

The facts of the present case describe circumstances more compelling than those the *Gomez* court determined to be unacceptable. For example, in *Gomez,* but not the instant case, the trial court responded to the jury's concern by indicating, correctly, that a mistrial would be declared if a unanimous verdict could not be reached. Furthermore, in *Gomez,* but not the instant case, individual jurors were able to ask questions. In the present case, the only questions or answers came from the presiding juror. As to whether the jury may have been misled, in *Gomez,* the trial court failed to answer a procedural question whereas here, the trial court failed to answer a question of law not addressed in the previous instructions given to the jury.

Finally, the context of the stage of the deliberations must be taken into account. Late in the evening, the presiding juror in the instant matter informed the trial court that agreement had been reached in the burglary count, but that no agreement had been reached in the aggravated assault count. The court polled the jurors, and a majority indicated that they would rather stay and deliberate further rather than resume in the morning. The trial court then instructed the

jury to continue with deliberations, reminding them that they had the option of letting the bailiff know at what point the jury would like to recess if they could not reach a verdict. This response by the trial court only exacerbated the confusion of the jury and does not amount, as the majority suggests, to a mere directive to the jury to resume deliberations. Rather, by refusing to answer the jury's question as to the effect of an inability to return two unanimous verdicts, and then telling the jury that they could take a recess suggested that they would have to keep trying until unanimity was reached. Less than an hour later, the jury returned with a guilty verdict on the aggravated assault count.

The *Gomez* court recognized that a trial court's comments need not amount to a dynamite instruction to be error, concluding instead that the pertinent inquiry is whether such comments nevertheless "may well have misled the jury." *Id.* The *Gomez* court stated:

> It is clear that the jury was confused about what would happen if it did not reach a unanimous verdict. It is also clear what the proper answer was to the jury's questions: The prosecutor's office decides whether to seek a new trial. *E.g., State v. Clay,* 112 Idaho 261, 265, 731 P.2d 804, 808 (Ct.App.1987) ("when a jury is unable to agree on a verdict, the case may or may not be retried").
>
> It is apparent that the jury had difficulty reaching a verdict. It is quite possible that the district court's comments left the jury with the impression that if it did not reach a verdict, there would not be another trial. The court's comments did not amount to a dynamite instruction, but they may well have misled the jury. The district court could have answered the jury's question with a simple statement: the prosecutor decides whether to seek a new trial, and the case may be retried before another jury.

*Gomez,* 137 Idaho at 677, 52 P.3d at 321. The question is therefore not whether there is tangible evidence of a pervasive confusion, but whether the circumstances, and the trial court's response to those circumstances, cast any doubt on the reliability of the verdict.

As in *Gomez,* the trial court's comments in the instant case did not amount to a dynamite instruction, but it is quite possible the trial court's failure to answer the jury's question contributed to the verdict that was reached by the jury. Consequently, I would vacate the judgment of conviction and remand for further proceedings.