52 P.3d 315

STATE of Idaho, Plaintiff–Respondent,

v.

Lawrence E. GOMEZ, Defendant–Appellant.

No. 26185.

Supreme Court of Idaho.
Boise, April 2002 Term.

July 19, 2002.

Molly J. Huskey, Ada County Public Defender, Boise, for appellant. Richard J. Hansen argued.

Hon. Alan G. Lance, Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

SCHROEDER, Justice.

Lawrence E. Gomez appeals from his convictions for aggravated assault on a law enforcement officer and felony eluding. Gomez argues that the district court improperly restricted his right to cross-examine witnesses for bias and that the court coerced a jury verdict first, by issuing a dynamite instruction and second, by not informing the jury that he could be retried if the jury did not reach a verdict.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

Kootenai County Deputy Sheriff Jeffrey D. Thurman was patrolling when he turned to follow a red pickup truck. When he got behind the truck it accelerated to over 80 miles per hour. The deputy activated his lights and siren, but the truck did not pull over. A chase ensued at speeds up to 120 miles per hour. The chase went through the town of Athol, and someone in the truck fired shots at the deputy. Eventually the truck stopped and its two occupants fled on foot.

Gomez was charged with aggravated assault upon a law enforcement officer and felony eluding a law enforcement officer. Gomez's identity was established at trial by Brian Marsh and John Derr who testified that Gomez told them he had shot at the deputy while his girlfriend re-loaded the gun. Ronald Stevens testified that he had seen Gomez with a .38 caliber handgun in the days prior to the crime. Catherine Stevens testified that she picked up Gomez and his girlfriend near where the truck had been abandoned.

The district court did not allow Gomez to question Catherine or Ronald Stevens regarding the fact that police found marijuana at their home and that they had not been prosecuted. Gomez argued this could establish bias. The district court also sustained objections to questions regarding whether Derr had cooperated with the police in the past and those regarding the conditions of his immunity with the State, which could also show bias. Gomez maintains that the district court coerced a jury verdict by issuing a "dynamite instruction" and by failing to instruct the jury that Gomez could be retried if the jury did not reach a unanimous verdict.

## II.

### STANDARD OF REVIEW

The standard of review for harmless error was examined recently by the Court of Appeals in *State v. Slater*, 136 Idaho 293, 300, 32 P.3d 685, 692 (Ct.App.2001). That case said that the question on appeal is " 'whether a reviewing court can find beyond a reasonable doubt that the jury would have reached the same result without the admission of the challenged evidence.' " *Id.* (quoting *State v. Moore*, 131 Idaho 814, 821, 965 P.2d 174, 181 (1998)). "Where an error concerns evidence omitted at trial, the test for harmless error is whether there is a reasonable possibility that the lack of excluded evidence contributed to the verdict." *State v. Barcella*, 135 Idaho 191, 197, 16 P.3d 288, 294

(Ct.App.2000) (citing *State v. Harris,* 132 Idaho 843, 847, 979 P.2d 1201, 1205 (1999)).

### III.

### IN SOME INSTANCES THE DISTRICT COURT IMPROPERLY RESTRICT- ED GOMEZ'S RIGHT TO CROSS- EXAMINE WITNESSES FOR BIAS

 The Sixth Amendment confrontation clause guarantees a defendant "an opportunity for effective cross-examination." *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15, 19 (1985). However, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986).

 In reviewing the trial court's decision as to relevance, the standard of review is de novo. *State v. Thompson,* 132 Idaho 628, 630, 977 P.2d 890, 892 (1999) (citing *State v. Raudebaugh,* 124 Idaho 758, 766, 864 P.2d 596, 604 (1993)). In reviewing the trial court's decision as to whether the probative value of the evidence outweighs its prejudicial impact, the standard of review is abuse of discretion. *Id.*

#### Brian March

 The State called Brian March as a witness who testified that he had been in the county jail with Gomez who commented upon a newspaper article about the crime in question. Gomez told March that his girlfriend, Heidi Hageman, loaded the gun and that he was shooting at the deputy. Prior to March's testimony, the State sought to exclude references to March's felony conviction for eluding a police officer. However, the district court allowed Gomez to question March about his conviction and probation violation.

Gomez argues that March should have been excluded as a witness on the grounds that the State did not comply with the proper discovery rules by not producing March's criminal history. The State responded that it had disclosed March's existence as a witness and that the State had a videotaped statement from March, which neither the prosecutor nor the defense attorney had seen. The State said there was no other discovery. The district court did not exclude March as a witness. Gomez argues that he was not allowed to question March about "other probation violations," but there is no evidence in the record that there were other probation violations. The district court did not err by allowing March to testify, and Gomez's right to cross-examine March for bias was not limited by the district court. Gomez was allowed to question March on every issue requested. There was no error by the district court.

#### Ronald and Catherine Stevens

 The State called Ronald and Catherine Stevens as witnesses. Mr. and Mrs. Stevens are the parents of Heidi Hageman, Gomez's girlfriend. Mr. Stevens testified that he had seen Gomez firing a .38 caliber handgun in the days prior to the crime in question.

Mrs. Stevens testified that she received a phone call from Gomez on the morning after the crime in question. She drove to Athol, Idaho, and picked up Gomez and Hageman and gave them a ride back to her house. She testified that Gomez laid low in the seat of the car like he was hiding, and that she had previously seen Gomez driving the pickup truck in question.

On cross-examination Gomez sought to introduce evidence that the police had found marijuana in the Stevens' house during a search. The State objected on the basis of relevancy. Gomez argued that growing marijuana where a minor resides is a felony, and that there was a tape recording of discussions with the Stevenses that "statements were made in view of your cooperation and we are not going to prosecute you for these significant felonies." Gomez sought to question both Mr. and Mrs. Stevens to show that they had not been prosecuted for this crime and this could show bias. The prosecutor

conducted a voir dire examination of Mrs. Stevens who denied any deal for her testimony. Based on this testimony, the district court upheld the State's objection, stating: "I don't find anything here that would establish a motive here prompting the cooperation with the police from the fact that there were marijuana plants on the property." The district court excluded the evidence, holding that it was more prejudicial than probative under IRE 403.

The questions regarding the presence of marijuana were relevant, even though Catherine Stevens denied any agreement to testify in exchange for non-prosecution. Marijuana plants were found, and the witness had not been prosecuted for this. The jury could infer that an agreement took place, even though Catherine Stevens denied one existed. The question, therefore, is whether there was an abuse of discretion in restricting cross-examination on this subject. The Court concludes that there was.

The Stevenses had strong motivations to testify for the State. They were growing marijuana in a residence with children. This could have resulted in a felony prosecution. They were not prosecuted. The jury could have concluded that they testified for the State to avoid prosecution, and this could have influenced the evaluation of their credibility. This is the type of cross-examination that is routinely allowed to determine whether witnesses have a motive to testify that may bring their credibility into question. Cross-examination should have been allowed.

*John Derr*

■ The State called John Derr as a witness. Derr exercised his Fifth Amendment right against self-incrimination and refused to testify. However, he was granted use immunity, whereby the State agreed not to use any of his testimony against him. Derr then testified that he had known Gomez for several years, and that Gomez had told him that he had shot at the deputy. The district court limited several areas of cross-examination that Gomez attempted to pursue.

Derr admitted that he had been on methamphetamine for fifteen straight days around the time of his conversations with Gomez.

Gomez asked Derr "how were you getting the methamphetamine into your body for those 15 days?" A relevance objection was sustained. This is not error—the jury heard that Derr was on the drug; the method of getting it into his body is of little relevance. The district court also sustained objections to questions about where Derr got money to buy the drug. This too was irrelevant.

■ Gomez also questioned Derr about the immunity agreement. He asked Derr: "You have been given use immunity here, so any crimes you admit to this prosecutor is not going to prosecute you for, right?" The State objected to this question, arguing that it misstated the agreement. The district court sustained the objection, stating: "I am not going to have this witness testifying with regard to the legal ramifications of use immunity." There is no error. The jury heard that Derr had gotten use immunity and that the prosecutor agreed not to use Derr's testimony against him; use immunity does not prevent the State from prosecuting Derr for any crimes; it simply prevents the State from using Derr's testimony in that case.

■ Later, Gomez asked Derr: "you've informed on other people to help yourself out of criminal cases in the past, haven't you?" The State objected on the grounds of relevance and this objection was sustained. This is a relevant question. If Derr had informed on others in exchange for non-prosecution, it could make it more likely that he would do so in Gomez's case. Gomez also asked Derr if he had worked with the police in doing "reverse stings." The State objected on the basis of relevance. This objection was sustained. This is also a relevant question: the extent to which Derr has cooperated with the police may make further cooperation more likely.

■ Gomez then asked Derr if he got paid by the Criminal Investigation Bureau for helping them with information on criminal activity. The State objected, arguing that Gomez should not be allowed to ask that question unless there was an offer of proof that would support the question. No such offer of proof was made and no explanation given as to why an offer of proof could not be

made, so the objection was sustained. This was not error, since no evidence was offered that Derr had ever been paid for informing the police.

## IV.

## THE DISTRICT COURT ERRED BY FAILING TO INSTRUCT THE JURY THAT GOMEZ COULD BE RE-TRIED IN THE EVENT THE JURY COULD NOT REACH A VERDICT

■ Gomez argues that the district court erred by giving an improper dynamite instruction. "A dynamite instruction is one that directs a deadlocked jury to continue deliberating and exhorts those jurors holding a minority view to reconsider their position." *State v. Hernandez*, 133 Idaho 576, 586, 990 P.2d 742, 752 (Ct.App.1999) (citing *State v. Martinez*, 122 Idaho 158, 162, 832 P.2d 331, 335 (Ct.App.1992)). In order to avoid jury coercion, Idaho has adopted a "blanket prohibition against dynamite instructions." *State v. Flint*, 114 Idaho 806, 812, 761 P.2d 1158, 1164 (1988).

■ The district court's comments in this case do not amount to a dynamite instruction. The comments to which Gomez objects came after the jury submitted a question to the district court. The jury asked the court, "what happens if the jury cannot unanimously agree to either a guilty or a not guilty verdict?" The court explained that the jury becomes a "hung jury" or a "deadlocked" jury, and that the court would then declare a mistrial. A juror then asked the district court, "if we do not come to a conclusion, sir, in the next hour or two or three or four hours, is there any arrangement for our time and energy?" The district court responded, stating:

> [T]he system does depend on jury deliberations. And in some cases they are not easy . . . . the issue of how long and how to continue jury deliberations is discretionary with the Court; ultimately, I make the call. . . . I have had juries say, no we don't want to go home. We think if we keep working at it, we can get it tonight. Let us keep working at it. . . . The idea being, as I say, to create a situation where delib-

erations can continue for as long as they possibly can continue, as long as there's a hope out there that—a reasonable hope out there that everyone is talking and looking at their individual decisions and seeing if they can't adjust them and them go so that a unanimous verdict is possible one way or another.

The court stated that it could not require the jurors to stay beyond 8 or 9 PM.

The district court informed the jurors that the system depended on their deliberations and that the goal of a jury trial is to get a unanimous verdict. The district court did not direct any jurors to change their minds or attempt to coerce a verdict.

■ Gomez also argues that the district court erred by not informing the jurors that Gomez could be retried if the jury did not reach a unanimous verdict. When the jury asked the court what would happen if it could not reach a verdict, the court stated that a mistrial would be declared, and that "further proceedings from that point are governed by Idaho law and the Rules of Criminal Procedure," and that it would be as if this trial never occurred. In response to this, a juror asked: "if we are deadlocked, as you would say, then would Mr. Gomez then be tried for this same offense on another date or another time? Or would this be a done deal?" The court stated: "what happens is it rolls back in time to just as if this trial had never happened. . . . And with any criminal proceeding, you know, I never know what trials are going to go, what trials aren't going to go, and what's going to happen." Later, another juror specifically asked the court: "does the prosecutor's office then decide if they want to press for a new trial? Is that how that works?" The court would only tell the jury that the process is governed by Idaho law, and that "the problem with trying to get into that, the problem is once I start explaining that to you, where do I stop, because I could probably give you a whole shelf of books." Another juror asked the court, "is there automatically a new trial?" The court responded that "nothing in the world is automatic."

It is clear that the jury was confused about what would happen if it did not reach a unanimous verdict. It is also clear what the proper answer was to the jury's questions: The prosecutor's office decides whether to seek a new trial. *E.g., State v. Clay,* 112 Idaho 261, 265, 731 P.2d 804, 808 (Ct.App. 1987) ("when a jury is unable to agree on a verdict, the case may or may not be retried").

It is apparent that the jury had difficulty reaching a verdict. It is quite possible that the district court's comments left the jury with the impression that if it did not reach verdict, there would not be another trial. The court's comments did not amount to a dynamite instruction, but they may well have misled the jury. The district court could have answered the jury's question with a simple statement: the prosecutor decides whether to seek a new trial, and the case may be retried before another jury.

## V.

### CONCLUSION

There is a reasonable possibility that the errors in this case contributed to the verdict that was reached by the jury. The judgment of conviction and the sentence are vacated. The case is remanded for further proceedings.

Chief Justice TROUT, Justices WALTERS, KIDWELL and EISMANN concur.