77 P.3d 976

STATE of Idaho, Plaintiff–Respondent,

v.

David HARSHBARGER, Defendant–Appellant.

No. 27848.

Court of Appeals of Idaho.

July 9, 2003.

Review Denied Oct. 17, 2003.

Craig Harrison Durham, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

SCHWARTZMAN, Judge Pro Tem.

This is an appeal from a judgment of conviction for lewd conduct with a minor child under sixteen. David Harshbarger claims that the district court erred by not granting him a continuance to secure the testimony of

a physician who had examined the alleged victim, that the district court erred by not allowing him to present evidence regarding the alleged victim's prior allegations of sexual abuse, that the district court erred by restricting cross-examination of his wife regarding criminal charges against her that had been dismissed, and that the sentence imposed is excessive. We affirm.

## BACKGROUND

Harshbarger was charged with lewd conduct with a minor child under sixteen, Idaho Code § 18–1508, for acts that occurred between May and November of 2000 with his then nine-year-old daughter, B.H. Prior to trial, Harshbarger filed a "motion in limine," seeking a ruling that he be allowed to introduce evidence that B.H. had accused her uncle of sexual abuse in 1994 and then later admitted that the accusation was a lie, and had also accused her cousin of sexual abuse between 1994 and 1996. B.H. was born in 1990. The district court concluded that because of the difference in B.H.'s age at the time of the recantations, four and six years old, and at the time of trial, ten years old, as well as the possibility of creating a mini-trial to determine whether the prior accusations were true, the evidence would not be admitted.

The parties also discussed with the court the specific testimony that witnesses would be allowed to give. The district court advised Harshbarger, pursuant to Idaho Rule of Evidence 608, that he would be allowed to solicit testimony regarding witnesses' opinions of and B.H.'s reputation for truthfulness, but not regarding specific instances of B.H.'s allegedly untruthful conduct.

B.H. was called as the first witness at trial. She had a difficult time testifying about the subject matter, but testified that when her mother was at work, her father would wake her up, take her into his bedroom, and take off his clothes after telling her to take her clothes off. B.H. was unable to testify regarding how her father would touch her once they were on the bed, but wrote that "[h]e would stick his pennes [sic] in my butt." On cross-examination, Harshbarger solicited testimony from B.H. comparing the living conditions of B.H.'s residence when she lived with Harshbarger to the living conditions where she had been placed in foster care, attempting to show that she had made the accusation of sexual abuse for the purpose of securing a better place to live.

The next witness was Daniel Chatterton, a police officer, who testified that during a police interview Harshbarger admitted that there had been an incident when B.H. came into his bed while he had been masturbating, and that his penis had touched her anus. Chatterton further testified that Harshbarger admitted that there were occasions when "perhaps by accident" the acts were completed. Chatterton stated that during a second interview Harshbarger initially denied these admissions, but then admitted that his penis had touched B.H.'s anus. Chatterton also testified that Harshbarger said that he could "get counseling and perhaps stop."

Lisa Harshbarger, the defendant's wife, testified that the only indication she had that Harshbarger was molesting B.H. was that he eased up on B.H.'s punishment and allowed her to start playing with a video game console. After the state concluded its direct examination of Lisa, Harshbarger's counsel sought a ruling outside the presence of the jury as to whether he could impeach Lisa by showing that charges against her for felony injury to child and failure to report in connection with her husband's molestation of B.H. had been reduced to misdemeanors and eventually dismissed. The district court ruled that the testimony would not be admitted because there had been no showing that the state had agreed to dismiss the charges in exchange for Lisa's testimony against her husband. On cross-examination, Lisa acknowledged that she did not believe that Harshbarger was sexually abusing their daughter until after she herself was arrested.

The state's last witness was a retired police officer who testified that in 1985, when Harshbarger was approximately seventeen years old, Harshbarger admitted to engaging in digital-vaginal contact with and placing his penis between the buttocks of his four-year-old niece for sexual gratification.

In his defense, Harshbarger called his father and brother to testify that, in their

opinions, B.H. was not a truthful person and that she had a reputation for not being a truthful person. Harshbarger took the stand and admitted to the sexual misconduct in 1985 for which he had been tried as a juvenile, and said that he learned a lesson from the experience. Harshbarger stated that he would "just as soon be dead" as have sex with a child again. In addition, Harshbarger testified that he would not molest B.H. and denied the admissions that Chatterton attributed to him.

After Harshbarger testified, his counsel informed the district court that a potential witness, Dr. Adrian, was not available, but that counsel "would like to have a continuance to try to get him in." Prior to trial, when the parties were discussing which witnesses would be called to testify, counsel had said to the court, "I'm still debating on the doctor." After asking for the continuance, Harshbarger's counsel admitted that Dr. Adrian had not been subpoenaed because counsel had not been sure whether he wanted to call Dr. Adrian to testify. During a recess in which counsel telephoned Dr. Adrian's office, counsel was unable to confirm when Dr. Adrian would be available. After counsel so informed the court, the district judge asked, "So where are we?" to which Harshbarger's counsel replied, "We are going to rest."

The jury found Harshbarger guilty of lewd conduct with a minor child under sixteen. At sentencing, the district court considered the fact that this was Harshbarger's fourth conviction for a sex crime in less than twenty years: two convictions for indecent liberties as a juvenile, a rape while he was in the military, and the instant case, in which he maintained his innocence despite the jury's finding. The district court imposed a unified sentence of life imprisonment, with a minimum period of confinement of twenty-five years. Harshbarger appeals.

## ANALYSIS

**A. Whether the District Court Erred by not Granting Harshbarger a Continuance to Secure the Testimony of a Physician Who Had Examined the Alleged Victim**

■ Harshbarger argues that his constitutional right to compulsory process was violated by the district court's refusal to grant a continuance to permit him to secure the attendance of Dr. Adrian. Dr. Adrian had examined B.H. and found no physical evidence of anal damage and concluded that B.H. was still a virgin.

■ A decision whether to grant or deny a motion for a continuance is vested in the sound discretion of the trial court. *State v. Ward*, 98 Idaho 571, 574, 569 P.2d 916, 919 (1977); *State v. Keetch*, 134 Idaho 327, 329, 1 P.3d 828, 830 (Ct.App.2000). In reviewing such a discretionary decision, this Court engages in a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Ransom*, 124 Idaho 703, 706, 864 P.2d 149, 152 (1993); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct.App.1996). To warrant a reversal, a defendant must show that his substantial rights were prejudiced by the denial. *State v. Nunez*, 133 Idaho 13, 21, 981 P.2d 738, 746 (1999); *State v. Wood*, 132 Idaho 88, 106, 967 P.2d 702, 720 (1998).

■ Due process requires that a defendant be given a fair opportunity to defend against the state's accusations. *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297, 308 (1973). Thus, the Compulsory Process Clause guarantees the right of a defendant to call witnesses in his defense. *Taylor v. Illinois*, 484 U.S. 400, 407–08, 108 S.Ct. 646, 652, 98 L.Ed.2d 798, 809–10 (1988). However, the availability of the compulsory process right is entirely dependent on the defendant's initiative: "The very nature of the right requires that its effective use be preceded by deliberate planning and affirmative conduct." *Id.* at 410, 108 S.Ct. at 653, 98 L.Ed.2d at 811.

■ Harshbarger's counsel was unsure prior to trial whether he even wanted to call

Dr. Adrian to testify. Dr. Adrian was never subpoenaed to testify. At the time his motion for a continuance was made, Harshbarger's counsel was unable to make any showing as to when, if ever, Dr. Adrian would be available to testify. Indeed, after admitting such, counsel said, "We are going to rest." This was a tacit withdrawal of the issue. In order to preserve an issue for appellate review, a defendant must maintain his position on the issue rather than withdrawing it when the trial judge questions counsel, but has not yet given an adverse ruling. *See State v. Holland*, 135 Idaho 159, 161, 15 P.3d 1167, 1169 (2000). We conclude that the district court did not issue an adverse ruling which is reviewable on appeal.

**B. Whether the District Court Erred by not Allowing Harshbarger to Present Evidence Regarding the Alleged Victim's Prior Allegations of Sexual Abuse**

■ Harshbarger argues that the district court violated his right to confrontation when it excluded evidence that B.H. had previously made allegations of sexual abuse against others and then recanted the allegations. The Sixth Amendment Confrontation Clause guarantees a criminal defendant an opportunity for effective cross-examination. *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15, 19 (1985); *State v. Gomez*, 137 Idaho 671, 674, 52 P.3d 315, 318 (2002). However, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986); *Gomez*, 137 Idaho at 674, 52 P.3d at 318. In reviewing the district court's conclusion as to relevance, this Court exercises de novo review. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993). If the evidence is deemed relevant, then the trial court's determination under Idaho Rule of Evidence 403 that the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury is reviewed for an abuse of discretion. *State v. Matthews*, 124 Idaho 806, 809, 864 P.2d 644, 647 (Ct.App.1993). We conclude that the exclusion was appropriate.

■ Idaho Rule of Evidence 412(b)(2)(C) provides, "Notwithstanding any other provision of law, in a criminal case in which a person is accused of·a sex crime, evidencè of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is admitted in accordance with subdivision (c) and is evidence of false allegations of sex crimes made at an earlier time." However, even if the requirements of this rule are satisfied, the proffered evidence is still subject to Rule 403 considerations.

In *State v. MacDonald*, 131 Idaho 367, 956 P.2d 1314 (Ct.App.1998), this Court reviewed the district court's exclusion of prior rape allegations and subsequent recantations by the complaining witness in a rape case. The defendant moved, pursuant to I.R.E. 412, to introduce evidence that when the complaining witness was sixteen years old, she alleged that her adoptive father had been raping her since she was eight years old. After being removed from her home, the complaining witness had recanted the allegations. At the hearing, the complaining witness recanted her recantation, claiming that her adoptive father did in fact sexually abuse her. The complaining witness testified that the reason she recanted the original allegations was so that she could live with her adoptive father rather than be placed in another foster home. The district court excluded the proffered evidence, concluding, among other things, that the evidence was so highly prejudicial that it would inflame and confuse the jury.

On appeal, this Court held that the district court did not abuse its discretion under Rule 403 in excluding the evidence because admitting the evidence "would be opening a pandora's box of unfairly prejudicial, confusing and time-consuming issues." *Id.* at 371, 956 P.2d at 1318. This Court also noted that "[a] trial should not stray far from the central issue of

guilt or innocence of the defendant into a full-scale investigation of charges made by the prosecutrix against other persons." *Id.*

The salient facts of *State v. Downing,* 128 Idaho 149, 911 P.2d 145 (Ct.App.1996), bear an even closer resemblance to the facts of this case. In *Downing,* the defendant had been found guilty of lewd conduct with a minor. The alleged victim was twelve years old at the time of the offense, and fifteen years old at the time of trial. The defendant sought to impeach the credibility of the victim by introducing evidence that when she was about six years old she had made sexual abuse allegations against the defendant, against a judge and an attorney during a custody dispute, and against medical personnel for touching her stomach during a physical examination. The district court concluded that these allegations were too remote in time to have probative value, and excluded them.

On review, this Court found no fault with the trial court's determination that early childhood falsehoods are irrelevant to the character for truthfulness or untruthfulness of a witness who is now an adolescent. *Id.* at 152, 911 P.2d at 148. This Court also considered the defendant's claim that the exclusion infringed on his constitutional right to confront witnesses, but rejected it on the same ground—that the victim's deceit as a six-year-old child is of little or no relevance to her character for truthfulness at age fifteen. *Id.* at 153, 911 P.2d at 149. This Court also noted that a number of defense witnesses testified that the victim was not a truthful person.

Here, as in *Downing,* Harshbarger was allowed to present defense witnesses to testify that B.H. was not a truthful person. While the difference in B.H.'s age and development between the two instances of allegations was less than that in *Downing,* we hold that the district court's exclusion was an appropriate exercise of its discretion, and that the court did not violate Harshbarger's constitutional right to confrontation by pre-

venting a mini-trial of B.H.'s prior allegations.

**C. Whether the District Court Committed Reversible Error by Restricting Harshbarger's Cross–Examination of His Wife Regarding Criminal Charges Against Her that Had Been Dismissed**

■ Harshbarger argues that his right to confrontation was violated when the district court restricted him from cross-examining his wife regarding charges against her that were ultimately dismissed. After the state concluded its direct examination of Lisa, Harshbarger's counsel told the district court that he intended to impeach her by showing that charges of felony injury to a child and failure to report had been made against her, then reduced to misdemeanors, and finally withdrawn. The charges related to facilitating or allowing Harshbarger to sexually abuse B.H. The prosecuting attorney informed the court that there had been no offers or deals between Lisa and the state in connection with the dismissal of charges. The district court excluded the evidence on the grounds that it did not relate to Lisa's conduct and there was no evidence of an agreement with the state.

■ As previously noted, the Sixth Amendment Confrontation Clause guarantees a criminal defendant an opportunity for effective cross-examination. *Fensterer,* 474 U.S. at 20, 106 S.Ct. at 294, 88 L.Ed.2d at 19; *Gomez,* 137 Idaho at 674, 52 P.3d at 318. This includes the right to expose a witness's possible bias and motive for testifying, as the jurors are entitled to have the benefit of the defense theory before them so that they can make an informed judgment as to the weight of the witness's testimony. *Davis v. Alaska,* 415 U.S. 308, 316–17, 94 S.Ct. 1105, 1110–11, 39 L.Ed.2d 347, 353–54 (1974).

In *Gomez,* the Idaho Supreme Court found error under circumstances very similar to the case at bar where the trial court excluded evidence that two of the state's witnesses had not been prosecuted for an unrelated crime.[1] *Id.* at 673, 52 P.3d at 317. The defendant

---

1. We note that the district court did not have the benefit of the *Gomez* decision at the time it made its ruling in this case.

argued that this evidence could establish bias. While acknowledging that there was no evidence indicating there had been any deal regarding the witnesses' testimony and the state's decision not to prosecute, the Idaho Supreme Court concluded that the jury could have inferred that the witnesses testified for the state to avoid prosecution, and held that the restriction on cross-examination of this subject was error. *Id.* at 675, 52 P.3d at 319.

In this case, the district court restricted the defendant's cross-examination and prevented him from bringing out the fact that the witness was not being prosecuted for crimes for which she had been previously arrested and charged. As in *Gomez*, nothing in the record indicates that any bargain was struck wherein the state agreed not to prosecute in exchange for Lisa's testimony against Harshbarger. Unlike the witnesses in *Gomez*, Lisa had actually been charged with the crimes, which were later dismissed. Moreover, these crimes were inextricably related to the crime Harshbarger was tried for when Lisa testified. This connection certainly enhances the probative value of the fact that the charges were dismissed. Exposure and exploration of this information could raise an inference that Lisa had a motivation to testify favorably for the state, whether as a result of an implied understanding with the state or expectation of insuring that charges would not be refiled. The prosecutor's bald assertion that no deal had been struck was insufficient to dispel this inference. Thus, the district court's restriction of Harshbarger's cross-examination of Lisa regarding the dismissed charges was error.

 It remains to be determined whether this was reversible error. In making such an assessment, we must inquire whether there is a reasonable possibility that the error contributed to the jury's verdict. *Gomez*, 137 Idaho at 677, 52 P.3d at 321; *State v. Moore*, 131 Idaho 814, 821, 965 P.2d 174, 181 (1998); *State v. Green*, 136 Idaho 553, 557, 38 P.3d 132, 136 (Ct.App.2001); *State v. Slater*, 136 Idaho 293, 300, 32 P.3d 685, 692 (Ct.App.2001).

Lisa's direct testimony, which Harshbarger sought to discredit through cross-examination on the dismissed charges, was of only marginal relevance: she testified to the facts that Harshbarger was at home watching their daughters while she was working at night and would have been with them during the charged time period; that he eased up on B.H.'s punishment and allowed her to start playing with a video game console; and that the sexual abuse allegations caused her to file for divorce. Lisa's credibility was not of crucial importance because her testimony added little to the state's case. Moreover, defense counsel elicited on cross-examination that Lisa did not initially believe B.H. when told of the abuse, that B.H. had previously lied to her, and that Lisa was told B.H. had recanted her allegations to a neighbor. Thus, we conclude that the restriction of Harshbarger's cross-examination was harmless error.

### D. Whether the Sentence Imposed Was Excessive

 Harshbarger argues that the unified sentence of life imprisonment, with a minimum period of confinement of twenty-five years, is excessive. In reviewing a sentence, this Court treats the minimum term specified by the sentencing judge as the probable duration of confinement. *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct. App.1989). The objectives of sentencing, against which the reasonableness of a sentence is to be measured, are the protection of society, the deterrence of crime, the rehabilitation of the offender, and punishment or retribution. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). In examining the reasonableness of a sentence, this Court conducts an independent review of the record, focusing on the nature of the offense and the character of the offender. *State v. Young*, 119 Idaho 510, 511, 808 P.2d 429, 430 (Ct.App.1991). This Court will find that the trial court abused its discretion in sentencing only if the defendant, in light of the objectives of sentencing, shows that his sentence was excessive under any reasonable view of the facts. *State v. Charboneau*, 124 Idaho 497, 499, 861 P.2d 67, 69 (1993); *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992).

Harshbarger's record has been characterized by sex crimes at several stages of his life. He molested children as an adolescent;[2] while in his twenties and serving in the military, he raped a female soldier; and now, in his thirties, he has molested his nine-year-old daughter. B.H. testified that Harshbarger told her he would commit similar acts on her sisters when they were older, and that he would have sex with B.H. when she was older, indicating that Harshbarger continues to pose a risk of shattering young lives. In light of Harshbarger's past misconduct, as well as the serious nature of the crime for which he was convicted, the district court did not abuse its discretion in imposing a life sentence with a minimum period of confinement of twenty-five years.

## CONCLUSION

We hold that the district court did not err by excluding evidence of B.H.'s prior allegations of abuse and committed harmless error by restricting Harshbarger's cross-examination of his wife Lisa. The sentence imposed is not excessive. Therefore, the judgment of conviction is affirmed.

Chief Judge LANSING and Judge GUTIERREZ concur.

---

**2.** While an officer testified at trial that the victim had been Harshbarger's four-year-old niece, the presentence investigation report indicates that there were two victims during this time period, a six-year-old boy and an eleven-year-old girl.