202 P.3d 1282

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Patrick Allen KARPACH,
Defendant–Appellant.**

**No. 33949.**

Court of Appeals of Idaho.

Jan. 22, 2009.

John Meienhofer, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jennifer E. Birken, Deputy Attorney General, Boise, for respondent. Jennifer E. Birken argued.

GUTIERREZ, Judge.

Patrick Allen Karpach appeals from his judgment of conviction upon a jury verdict finding him guilty of burglary, petit theft, and concealment of a dangerous weapon. Because we conclude that the exclusion of evidence amounts to reversible error, we vacate the judgment of conviction and remand for a new trial.

## I.

### FACTS AND PROCEDURE

For Christmas, Karpach's sister-in-law gave him a "Big Smith" brand hooded sweatshirt and a pair of coveralls, which she had purchased at Home Depot. Several days later, on December 30, 2005, Karpach entered the Home Depot store on Milwaukee in Boise through the entrance near the professional contractors desk ("pro desk"). It is here that each side's version of the facts diverge. Several Home Depot employees, including Jason Center, the head cashier at the time, Brad Earl, another store employee, and Joshua Toulouse, the store's loss prevention investigator who followed Karpach around the store, testified that Karpach approached a display of Big Smith clothing near the tool "corral" area of the store. There, he selected two items of clothing-a hooded sweatshirt and a pair of coveralls-and walked towards the door where he came in. He stopped at the pro desk, items still in hand, and asked an employee where the returns desk was located. When given an answer, he walked out and re-entered the store near the returns desk. Toulouse testified that he saw Karpach pull off several clothing tags and toss them on the ground as he was leaving the store. Center testified that the store alarm went off when Karpach exited and that Center recorded the alarm in the store's alarm log. After re-entering the store, Karpach allegedly presented the tags taken from the clothing he received for Christmas and went to return the items he had just taken. After watching the transaction, Toulouse called the Boise Police Department to the scene. Karpach was confronted in the parking lot by Toulouse and other Home Depot employees, and officers arrest-

ed him. During a search incident to arrest, brass knuckles were found in one of his pockets.

Karpach, on the other hand, testified that he initially entered Home Depot carrying the sweatshirt and coveralls he had received for Christmas, intending to return them because they did not fit. He entered near the pro desk and not immediately seeing the returns desk, inquired of an employee as to where the returns desk was. He then exited the building, immediately re-entering near the returns desk. He returned the items without a receipt, received store credit, and remained in the store for a brief time looking at compressors before he left and was confronted by Home Depot employees and the police in the parking lot.

Karpach was charged with burglary, Idaho Code § 18–1401, petit theft, I.C. §§ 18–2403(1), 18–2407(2), and concealing a dangerous weapon, I.C. § 18–3302(7). A jury found him guilty of all three charges, and Karpach filed a motion for a new trial on the basis of newly discovered evidence and alleged errors by the court during trial. After a hearing, the trial court denied the motion and entered a judgment of conviction. Karpach now appeals.

## II.

## ANALYSIS

### A. Exclusion of Exculpatory Evidence

Karpach contends the district court erred in excluding certain exculpatory evidence at trial. Specifically, he argues that the court should not have excluded testimony from a Home Depot manager about surveillance camera coverage in the store and should have admitted the store's alarm log into evidence. Karpach intended for Brett Steele, a new manager of Home Depot, to testify: (1) on the security camera coverage of the store and (2) to establish the foundation for admit-

tance of the alarm log which showed that no notation had been made indicating the alarm sounded when Karpach exited the store with the merchandise. The district court did not allow Steele to testify at all due to Karpach's failure to disclose Steele as a witness before trial, as required by Idaho Criminal Rule 16.[1] The court also held that his testimony would be irrelevant. Karpach now contests the exclusion of Steele's testimony.

#### 1. Steele's testimony regarding security cameras

The state's evidence regarding the surveillance camera coverage in the store was addressed through the testimony of Toulouse. Previously, at the preliminary hearing of March 30, 2006, Toulouse testified that video surveillance cameras filmed the area near the tool corral where Karpach allegedly removed clothing from the store. Toulouse also testified that he viewed the store's surveillance video tapes immediately after Karpach's arrest and that the only tape upon which Karpach appeared was that which covered the returns desk.

At trial, Toulouse testified for the first time that there never had been any surveillance video of the tool corral area because the surveillance cameras did not cover this section of the store. Karpach sought to counter Toulouse's testimony as to the absence of camera coverage by introducing the testimony of Steele. The state initially objected to Steele testifying concerning the camera coverage in the store because Steele had not previously been disclosed in discovery. In response, Karpach's defense counsel explained that he had not intended to call Steele in the defense's case-in-chief but, due to Toulouse's unanticipated change of position regarding the location of cameras within Home Depot, he needed Steele's testimony to show that closed circuit camera coverage was in place throughout the internal portion of Home Depot. The state thereafter withdrew

---

1. Idaho Criminal Rule 16(c)(3) requires that the defendant, upon written request by the prosecuting attorney, furnish the state a list of names and addresses of witnesses the defendant intends to call at trial. A written response to a discovery request must be served within fourteen days of service of the request. I.C.R. 16(e). There is a continuing duty to disclosure; the subsequent discovery of additional evidence or witnesses prior or to or during trial is subject to automatic discovery under the original discovery request. I.C.R. 16(i). The failure to comply with a discovery request is grounds for the imposition of sanctions by the court. I.C.R. 16(e)(2).

its objection to Steele testifying as to camera coverage in the store stating, . . . "Mr. Toulouse has been specific about what cameras cover what, and he's drawn it in."

The district court still refused to allow Steele to testify. Specifically, the court stated:

> This is trial by ambush. You simply didn't prepare this case in time to adequately provide discovery in any kind of timely fashion. It is not fair to the State. It is 4:23 in the afternoon. They've just rested. They have had no opportunity to talk to Mr. Steele. I don't think this is relevant evidence to start with. Even the camera angle.
>
> I am not sure if you're saying Mr. Steele would now testify that the camera angles were different, the range of vision-the range of view of the camera was somehow different from what Mr. Toulouse testified to. I suppose that could be relevant evidence, but you didn't disclose it. It is not fair, and I am not going to allow you to call Mr. Steele for any purpose.

■ The right to offer testimony is grounded in the Sixth Amendment Compulsory Process Clause, and the Sixth Amendment can be violated by imposition of a discovery sanction that entirely excludes the testimony of a material defense witness.[2] *Taylor v. Illinois,* 484 U.S. 400, 409, 108 S.Ct. 646, 653, 98 L.Ed.2d 798, 810 (1988); *State v. Harris,* 132 Idaho 843, 846, 979 P.2d 1201, 1204 (1999).

■ At the outset, we note that it was error for the district court to rule a discovery violation occurred, when Karpach had no indication prior to trial that Toulouse would change his testimony regarding the location of camera coverage within the store and therefore was not aware that Steele's testimony would be necessary. *See* I.C.R. 16(c)(3) (providing that the defendant's obligation to disclose witnesses prior to trial extends only to those that it *intends* to call). The state in essence acknowledged that Karpach had no forewarning of Toulouse's change in position when it *withdrew* its objection to Steele testifying about camera coverage. Accordingly, the district court's reliance upon a failure to disclose Steele in pretrial discovery was not a valid basis to exclude his testimony.

■ We next address the district court's alternate basis for exclusion of the testimony-that it was irrelevant and immaterial. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Idaho Rule of Evidence 401; *State v. Stevens,* 146 Idaho 139, 143, 191 P.3d 217, 221 (2008). We review questions of relevance *de novo. State v. Raudebaugh,* 124 Idaho 758, 764, 864 P.2d 596, 602 (1993).

Numerous times the district court discounted the relevancy of Steele's testimony and further clarified its reasoning on this point in its memorandum decision and order denying Karpach's motion for a new trial:

> Whether there was in fact additional camera coverage is irrelevant and immaterial (and it is uncontroverted from the evidence) as Toulouse testified that he reviewed all the camera video and did not find the Defendant on any videotape other than at the returns desk.

While Center, Earl, and Toulouse all testified as to varying parts of Karpach's actions within the store—that he proceeded to the Big Smith display and took a sweatshirt and coveralls, removed the tags, exited near the pro desk, and re-entered the store and returned the items—the only security camera footage that the jury was shown was that of

---

**2.** Relying on the general rule that rebuttal witnesses need not be disclosed, *see State v. Lopez,* 107 Idaho 726, 739, 692 P.2d 370, 383 (Ct.App. 1984), Karpach argues that Steele's testimony should have been admitted because it was "rebuttal" testimony. However, "rebuttal" is a term of art that refers to the evidence offered by the prosecution to contradict the evidence in the defendant's case-in-chief. *See id.* (noting that a prosecutor's duty to disclose witnesses does not extend to those called only in rebuttal). Evidence is not "rebuttal" evidence just because it refutes the state's case-in-chief; were we to characterize all evidence offered by the defendant that contradicts the state's case-in-chief as such, a defendant's entire case would essentially be "rebuttal" and a defendant would never be required to disclose any witnesses.

Karpach at the returns desk. Toulouse explained this lack of video evidence by testifying that there was not videotape of any of his or Karpach's other movements around the store—explicitly stating that there was not camera coverage of the tool corral area or the exit where Karpach left with the goods before re-entering. However, had Steele been allowed to testify that there was, in fact, camera coverage in those areas, the employees' stories could have been called into doubt—it would have begged the question that if the events had unfolded as they described, why video was not presented corroborating their story. Had the jury believed Steele's testimony, this could have seriously damaged the credibility of both Centers and Earl and most importantly, Toulouse, and raised the inference that Karpach had not actually visited the Big Smith display as they testified, because if he had, there would have been video evidence of his actions. Such an inference would have been entirely consistent with Karpach's version of the facts—that he entered the store near the pro desk with the sweatshirt and coveralls he had received for Christmas, asked for directions to the returns department at the pro desk, exited where he had entered, and re-entered the store and returned the items. Thus, the fact that Toulouse testified he had reviewed the entirety of the tapes and Karpach did not show up on any except at the returns desk does not, as the district court stated, preclude the relevance of Steele's proposed testimony—the point was that Toulouse's credibility would be substantially challenged if there was, in fact, video coverage of the tool corral, where Toulouse said there was not. In addition, there would have been great exculpatory value in showing that the tool corral was filmed and that the tape did not show Karpach at that location. Contrary to the district court's determination, Steele's testimony with regard to the camera coverage in the store was material and relevant, and it therefore was error for the court to exclude it.[3]

## 2. Alarm log

Karpach also contends that the district court erred in refusing to admit into evidence the alarm log because it was a highly significant piece of evidence that was wrongfully excluded by the district court due to the misapplication of the business records exception to the hearsay rule. We note the trial court has broad discretion in determining the admissibility of evidence. A decision to admit or deny evidence will not be disturbed on appeal absent a clear showing of abuse of that discretion. *State v. Smith,* 117 Idaho 225, 232, 786 P.2d 1127, 1134 (1990). Certain records of regularly conducted business activities are excepted from the exclusionary requirements of the hearsay rule. I.R.E. 803(6). This business record exception does not require the custodian of such records to vouch for the accuracy of the records at issue. *State v. Evans,* 129 Idaho 758, 932 P.2d 881 (1997).

Before Karpach attempted to introduce the alarm log into evidence, the state presented Center's recorded testimony (from the preliminary hearing) that the alarm had gone off when Karpach exited the store and that Center had noted the event in the log. However, Toulouse testified at trial that there was no indication in the log that the alarm had sounded at 3:45 p.m. on the date in question. The state objected to the log's admission on foundation grounds. In sustaining the state's objection, the district court found there was insufficient foundation because Toulouse had not "vouched" for the records, it was not part of his "regular business to maintain them," and he had "doubt about their accuracy." The court also noted that the information that there was no notation in the log that the alarm had gone off at 3:45 p.m. was already before the jury, and therefore, Karpach was not prejudiced by the document being excluded. We disagree with the district court's analysis. The log itself remained relevant to impeach Center's testimony that Karpach's exit caused the alarm to go off and that Center noted this alarm in the log. *See State v. Hayes,* 144 Idaho 574, 578, 165 P.3d 288, 292 (Ct.App.2007) ("[I]mpeachment evidence is that which is designed to discredit a witness, i.e. to reduce the effec-

---

**3.** We note the district court's ruling prevented Karpach from calling Steele to the stand and addressing any further foundation concerns expressed by the district court.

 

tiveness of his testimony by bringing forth the evidence which explains why the jury should not put faith in him or his testimony.").

In excluding the log, the court appeared to rely heavily on Toulouse's indication that he doubted the "accuracy" of the document. While Toulouse testified that the log was the type regularly kept during the course of business at Home Depot, he then expressed hesitation that it was accurate given his knowledge that during certain times of the day, employees failed to log alarms as they were directed. However, the overall accuracy or inaccuracy of the log book does not affect its relevance to impeach Center's testimony. Because there was conflicting testimony on whether the alarm went off and whether logging occurred *in this instance,* the log was material to Karpach's defense and we conclude that the district court abused its discretion in excluding it entirely.

### 3. Harmless error

 This Court will not reverse a judgment due to an erroneous lower court decision unless the error affects a substantial right of the defendant. *See* I.C.R. 52; *State v. Fisher,* 140 Idaho 365, 372, 93 P.3d 696, 703 (2004). An error is harmless if the reviewing court determines beyond a reasonable doubt that the jury would have reached the same result. *State v. Gomez,* 137 Idaho 671, 673, 52 P.3d 315, 317 (2002). If the error concerns omitted evidence, "the test for harmless error is whether there is a reasonable possibility that the lack of excluded evidence contributed to the verdict." *Gomez,* 137 Idaho at 673, 52 P.3d at 317 (citations and internal quotations omitted).

Given the centrality of the issue upon which Steele's proposed testimony would have touched—and the fact that it may have directly contradicted the state's only eyewitnesses—we conclude that the court's exclusion of Steele's testimony on the security camera coverage was not harmless. In addi-

tion, the lack of an entry in the alarm log when one of the state's primary witnesses had testified that not only had the alarm gone off when Karpach exited the store, but that the occurrence had been logged, was highly relevant and important to Karpach's defense that the only clothing he had handled within the store was the items he had received for Christmas. We note that the prosecutor's case against Karpach was not "airtight." Not only was Karpach not captured on camera doing anything but returning the items, Toulouse's testimony regarding the cameras and their coverage changed between the preliminary hearing and trial. Had Steele, in fact, testified that there was camera coverage of other areas of the store where the eyewitnesses alleged that Karpach visited, it could have undermined the credibility of the state's witnesses and may have given rise to some doubt as to Karpach's guilt. In sum, we are convinced that there is a reasonable possibility that the exclusion of Steele's testimony and the alarm log contributed to the verdict. Thus, we vacate Karpach's conviction for burglary and petit theft and remand for a new trial on these charges.[4]

### III.

### CONCLUSION

The district court abused its discretion in excluding Steele's testimony and the alarm log. Accordingly, we vacate the judgment of conviction and remand for a new trial.

Chief Judge LANSING and Judge Pro Tem SCHWARTZMAN concur.

---

4. Karpach's conviction for concealment of a dangerous weapon is unaffected by our decision-and he does not argue otherwise. Karpach listed as an issue in his appellant's brief, "Whether the jury verdict was supported by substantial and competent evidence upon which a rational trier

of fact could find that all the elements of the charged crimes had been established beyond a reasonable doubt?" However, he presented no argument on the concealment offense. Therefore we do not address it. See *State v. Zichko,* 129 Idaho 259, 923 P.2d 966 (1996).