IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 33053

| STATE OF IDAHO, | ) | |
|---|---|---|
| | ) | 2009 Opinion No. 11 |
| Plaintiff-Respondent, | ) | |
| | ) | Filed: February 19, 2009 |
| v. | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| MARIO A. RUIZ, JR., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Michael E. Wetherell, District Judge.

Judgment of conviction for trafficking in methamphetamine, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jennifer E. Birken, Deputy Attorney General, Boise, for respondent.

LANSING, Chief Judge

The question presented by this appeal is whether the rights of an accused under the Confrontation Clause are violated when a court prohibits the defendant from cross-examining a State's witness about a mandatory minimum prison term that the witness avoided through a cooperation agreement with the State where such cross-examination would also disclose to the jury the mandatory minimum sentence that the defendant will receive if convicted.

I.

BACKGROUND

On August 11, 2005, Megan Larsen, acting as a confidential informant for the Ada County Sheriff's Department, arranged to purchase approximately two ounces of methamphetamine from Josh Morrison.  After meeting, Larsen and Morrison drove to get the drugs from Morrison's supplier, whom they met in a parking lot.  Officers observing the transaction saw Larsen exit the car and a dark-complexioned man enter, then a few minutes later

1

saw the dark-complexioned man exit the car and Larsen get back in. Police were unable to identify the dark-complexioned man during their surveillance, but when they arrested Morrison on August 23, he identified the supplier as Mario Ruiz, appellant here.

Morrison and Ruiz were both charged with trafficking in twenty-eight or more grams of methamphetamine, Idaho Code § 37-2732B(a)(4), but Morrison agreed to testify for the state in exchange for the state reducing his charge to delivery of methamphetamine, I.C. § 37-2732(a)(1)(A). Both the trafficking and delivery charges carry a maximum possible punishment of life in prison, but trafficking in twenty-eight or more grams of methamphetamine also carries a mandatory minimum sentence of three years' imprisonment, which may not be suspended, I.C. § 37-2732B(a)(4), while delivery of the substance is not subject to a mandatory minimum sentence. I.C. § 37-2732(a)(1)(A).

At trial, Morrison testified against Ruiz in accordance with his plea agreement. On cross-examination, the court allowed Ruiz to establish that Morrison had a cooperation agreement with the State under which he agreed to testify against Ruiz and, in return, the State reduced his charge from trafficking to delivery of methamphetamine and agreed to recommend that Morrison be placed on probation, subject to some period in county jail, thereby allowing Morrison to avoid incarceration in the state prison. The court also allowed cross-examination of Morrison to inform the jury that the maximum possible sentence for Morrison's original trafficking charge was life imprisonment. The court precluded Ruiz from inquiring, however, about the mandatory three-year term of imprisonment that Morrison would have faced on the original trafficking charge. The district court was concerned that learning of the mandatory minimum sentence for the trafficking charge could influence the jury because Morrison's original charge was the same as the trafficking charge for which Ruiz was on trial. Although the precise nature of this concern was not articulated by the district court, the court apparently feared that knowing the magnitude of the sentence that Ruiz was facing might influence the jury for or against him. Ruiz was found guilty of trafficking in twenty-eight or more grams of methamphetamine.

On appeal, Ruiz argues that the prohibition against his cross-examination of Morrison about the mandatory minimum sentence that Morrison avoided under his agreement to testify for the State constitutes a violation of Ruiz's rights under the Confrontation Clause of the United States Constitution.

## II.

## ANALYSIS

The right of an accused to confront adverse witnesses is safeguarded by the Sixth Amendment. Its "main and essential purpose" is to secure the opportunity of cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). This includes the right to expose a prosecution witness's possible bias and motive for testifying so the jury can make an informed judgment as to the weight to be given the witness's testimony. *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974); *State v. Gomez*, 137 Idaho 671, 674-75, 52 P.3d 315, 318-19 (2002); *State v. Harshbarger*, 139 Idaho 287, 293, 77 P.3d 976, 982 (Ct. App. 2003); *State v. Green*, 136 Idaho 553, 556-57, 38 P.3d 132, 135-36 (Ct. App. 2001). That is not to say, however, that a defendant is entitled to conduct a cross-examination that "is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Rather, trial judges have wide latitude to "impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679. *See also State v. Hensley*, 145 Idaho 852, 858, 187 P.3d 1227, 1233 (2008); *State v. Pierce*, 107 Idaho 96, 104, 685 P.2d 837, 845 (Ct. App. 1984).

No Idaho appellate decision has considered whether the constitutional right of confrontation is violated by the exclusion of impeachment evidence where that evidence would also inform the jury of the minimum punishment that can be imposed on the defendant if he is found guilty. A somewhat similar issue was raised in *Pierce*, 107 Idaho 96, 685 P.2d 837. There, this Court found no error where a defendant was allowed to extensively cross-examine a prosecution witness concerning the witness's plea agreement with the State that reduced a pending charge against him, but was not allowed to disclose the maximum sentence that the witness avoided, for fear the jury would be prejudiced by learning the maximum sentence the defendant faced on the same charge. *Id.* at 104-05, 685 P.2d at 845-46. *Pierce* is distinguishable, however, because no Confrontation Clause challenge was presented by the appellant. Rather, the issue was considered under Idaho's common law rules of evidence before the Idaho Rules of Evidence were adopted.

More relevant to our inquiry is the United States Supreme Court's decision in *Davis*, 415 U.S. 308. There, a burglary defendant was not permitted to cross-examine a prosecution witness

about the witness's juvenile record and the fact that he was on probation for burglary. The defendant argued that such information was relevant to show bias because the witness was generally vulnerable as a probationer and because it was to the witness's advantage to implicate the defendant in the burglary in order to divert suspicion from himself. The Supreme Court held that this restriction on cross-examination violated the Confrontation Clause. The Court said that, subject to the trial judge's broad discretion to exclude repetitive and unduly harassing questions, "the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." *Id*. at 316. The Court further stated, "We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id*. at 316-17. Ultimately, the Court's concern was that "[w]hile counsel was permitted to ask [the witness] *whether* he was biased, counsel was unable to make a record from which to argue *why* [the witness] might have been biased . . . ." *Id*. at 318 (emphasis in original). Noting that Davis's cross-examination was so constrained that the jury might have suspected Davis's questions concerning the witness's bias were only baseless speculation, the Court concluded that "to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Id*.

Another United States Supreme Court decision, *Van Arsdall*, 475 U.S. 673, is also instructive. There, a defendant on trial for murder was barred from cross-examining a prosecution witness about a public drunkenness charge against him that was dropped in exchange for his talking with the prosecutor about the murder. The Supreme Court noted that trial judges have wide latitude to impose reasonable limits on cross-examination, but nevertheless held that the defendant's Confrontation Clause rights were violated when the trial court prohibited *all* inquiry into the possibility that the witness would be biased as a result of the State's dismissal of his pending charge. *Id*. at 679. The Court said that the jury reasonably could have found that the dismissal gave the witness a motive for favoring the State in his testimony. *Id.* The Court then concluded:

> [A] criminal defendant states a violation of the Confrontation Clause by showing
> that he was prohibited from engaging in otherwise appropriate cross-examination
> designed to show a prototypical form of bias on the part of the witness, and

thereby to "expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of witnesses."

*Id.* at 680 (quoting *Davis*, 415 U.S. at 318). The defendant had demonstrated a violation, the Court said, because "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defense counsel] been permitted to pursue his proposed line of cross-examination." *Id.*

Neither *Davis* nor *Van Arsdall* examined the narrow question presented here--whether the Confrontation Clause requires that an accused be allowed to cross-examine on a mandatory minimum sentence the witness avoided by testifying for the State where the evidence will also reveal the accused's punishment if he is convicted. Lower federal courts have addressed this issue, however, and have generally held that a concern that jury sympathy for the defendant may be aroused from disclosure of the punishment does not *ipso facto* justify exclusion of the impeachment evidence. Some circuit court decisions hold that cross-examination on the benefits a State's witness has received from the prosecution in exchange for the witness's testimony must be allowed in all but the most compelling circumstances. For example, in *Hoover v. Maryland*, 714 F.2d 301 (4th Cir. 1983), the Court said:

> The trial judge may limit such cross-examination only to preserve the witness' constitutional immunity from self-incrimination, to prevent attempts to harass, humiliate or annoy him, or where the information sought might endanger the witness' personal safety. When such factors are not present, substantial limitations on the attempts of a defendant to undermine as biased a witness' testimony constitute constitutional error.

*Id.* at 305 (citations omitted). At the other end of the spectrum are cases that give considerable weight to the State's interest in excluding such evidence, including *United States v. Luciano-Mosquera*, 63 F.3d 1142 (1st Cir. 1995), where the Court said that "any probative value of information about the precise number of years" that a witness may have faced absent his cooperation with the government was slight and "was outweighed by the potential for prejudice by having the jury learn what penalties the defendants were facing." *Id.* at 1153.

Other circuits take a flexible approach, balancing competing interests. Among these is the Ninth Circuit Court of Appeals. In *United States v. Larson*, 495 F.3d 1094 (9th Cir. 2007), the Ninth Circuit identified three factors it would consider in determining whether a defendant's Confrontation Clause right was violated through limited cross-examination: "(1) [whether] the excluded evidence was relevant; (2) [whether] there were other legitimate interests outweighing

the defendant's interest in presenting the evidence; and (3) [whether] the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness." *Id*. at 1103 (quoting *United States v. Beardslee*, 197 F.3d 378, 383 (9th Cir. 1999) (brackets in *Larson*)). The court then weighed the probative value of the omitted mandatory minimum sentence information against other legitimate governmental interests, such as a desire to prevent the jury from inferring the potential sentence faced by the defendant. *Id*. at 1104-05. It held that the Confrontation Clause was violated by a limitation on the cross-examination of a witness who had been facing a mandatory sentence of life imprisonment until agreeing to cooperate with the government. Even though the defense had elicited testimony that this witness was a drug addict and dealer, had been convicted of seven felonies, and was cooperating with the State in the hope that the prosecutor would reduce his sentence, the Ninth Circuit concluded that this admitted evidence alone "did not reveal the magnitude of his incentive to testify to the Government's satisfaction." *Id*. at 1105.

The Third Circuit employs a similar standard where the trial court has barred inquiry into an avoided mandatory sentence, asking whether the jury might have received a "significantly different impression of [the witnesses'] credibility" had it been apprised of the magnitude of the witnesses' stake in testifying against a defendant. *United States v. Chandler*, 326 F.3d 210, 222 (3rd Cir. 2003) (quoting *Van Arsdall*, 475 U.S. at 680). The *Chandler* court answered that query affirmatively, concluding that the excluded evidence "would have borne directly on the jury's consideration of the weight, if not the fact, of [the witnesses'] motive to testify as they did--facts, that is, which would have underscored dramatically their interest in satisfying the government's expectations of their testimony." *Id.* at 222. The *Chandler* court then turned to the question whether the exclusion of this testimony nevertheless fell within the trial court's discretion to impose "reasonable limits" on a defendant's right of cross-examination. In that context, the Third Circuit considered the government's interest in withholding information from which the jury might infer the defendant's prospective sentence, and which could provoke jury "nullification." The court held that such a government interest was outweighed by the defendant's constitutional right to confront adverse witnesses. *Id.* at 223. The government's interest, the court said, "had to yield" to the defendant's constitutional right to probe possible biases, prejudices, or ulterior motives of government witnesses. *Id.*

6

The Eighth Circuit also considered this issue. In *United States v. Caldwell*, 88 F.3d 522 (8th Cir. 1996), a defendant was barred from cross-examining a co-conspirator as to the mandatory ten-year sentence the witness had avoided through a plea agreement. *Id*. at 524-25. The trial court allowed the defendant to establish that the penalty cap for the witness's lesser charge was one year and that the avoided felony charge would have called for "time in the penitentiary," but barred further questioning on the ground that the witness's potential sentence before becoming a State witness was a collateral matter that couldn't be precisely determined. *Id*. The Eighth Circuit held the trial court's ruling to be an abuse of discretion, noting that a *mandatory* minimum sentence was not speculative and this evidence raised no concerns that would justify a court in limiting the cross-examination. *Id*. at 525.

We conclude that neither a rule categorically mandating the admission of evidence on the particular sentence that a State's witness has avoided through cooperation nor a rule giving great deference to the State's interest in excluding such evidence is desirable. Instead we will engage in a case-specific examination like those employed by the Ninth and Third Circuits, assessing whether the jury might have received a significantly different impression of the witness's credibility if it had been apprised of the mandatory prison sentence that was avoided by cooperation with the State.

In the present case, we conclude that the jury's ability to evaluate Morrison's credibility would not have been significantly different if the jurors had learned of the mandatory minimum sentence that he averted by cooperating with the State. The jury was apprised that Morrison benefited significantly from his agreement to testify against Ruiz by a reduction of his charge from one that carried a potential life term in the penitentiary to a lesser offense, with a sentence of probation that enabled him to avoid going to prison. The mandatory prison sentence averted by Morrison, three years, is not particularly harsh. Although the threat of such a sentence certainly gave Morrison motivation to cooperate with the State, the magnitude of that motivation is hardly comparable to the much greater mandatory sentences that the federal courts in the foregoing cases held to have been improperly concealed from the jury. Moreover, while the excluded evidence would have more completely revealed Morrison's incentive to please the State, the record here suggests no reason why Morrison would have believed that pleasing the State required fingering Ruiz if Ruiz was not, in fact, the dark-complexioned man who delivered the drugs. That is, nothing in the record indicates that the police were already targeting Ruiz

7

before Morrison identified him as Morrison's drug source. Thus, Morrison's incentive to help the State identify and apprehend the drug supplier does not appear to include an incentive to falsely identify that drug supplier as Ruiz, and disclosure of the avoided minimum sentence would not change that. On these facts, it is unlikely that omitting the magnitude of the avoided sentence left the jury with insufficient information to assess Morrison's credibility.

Our analysis could end here, but we take a moment to also address the State's claimed interest in excluding evidence of the mandatory sentence that Morrison avoided. Although the State may sometimes have a legitimate interest in preventing jury concern about the sentence that will be imposed upon the defendant if he or she is found guilty, in our view it will be a rare circumstance where that interest can trump a defendant's Confrontation Clause right to full disclosure of an adverse witness's possible biases and motives. This case exemplifies the situation where such asserted State interest bears little weight. For the charge against Ruiz, trafficking in methamphetamine, an average juror would hardly be surprised to learn that a serious penalty attaches. Neither the nature of Ruiz's offense nor the circumstances under which it was committed, are such as would be expected to engender much sympathy upon the jury learning that the offense carried a three-year mandatory minimum sentence. Further, we note that this State interest can generally be fully protected without infringing on the defendant's confrontation rights, by simply ensuring that the jury is not informed of the precise offense with which the State's witness was originally charged before the charge was reduced or dismissed. That is, the jury could be informed that the witness had been facing a criminal charge that carried a specific mandatory minimum sentence without also being informed that the charge was for precisely the same offense for which the defendant is on trial. An order in limine precluding either party from disclosing the witness's original charge would entirely circumvent the clash of interests that is presented here, while allowing full exercise of the defendant's constitutional right to confrontation.

Because Ruiz has not shown that his right to confront adverse witnesses was violated, the judgment of conviction is affirmed.

Judge PERRY and Judge GUTIERREZ **CONCUR.**

8